**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **REX PERFORMANCE PRODUCTS, LLC,** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. _____** |
| | ) | |
| **JAMES DONALD TATE, MANU BETTEGOWDA,** | ) | |
| **PREGIS PERFORMANCE PRODUCTS, LLC and** | ) | |
| **OLYMPUS PARTNERS, LLC,** | ) | |
| **Defendant** | ) | |

**NOTICE OF REMOVAL BY DEFENDANT JAMES DONALD TATE**

*The Parties*

1.      Plaintiff Rex Performance Products, LLC ("Plaintiff RPP") is a for-profit limited liability company that was formed and currently exists under the laws of the State of Michigan. Plaintiff RPP maintains its principal business office in the city of Marysville, St. Clair County, Michigan. *See* Original Petition of Plaintiff RPP at para. 6.

2.      Defendants consist of two individuals and two corporate entities. The individuals are James Donald Tate ("Defendant Tate"), a resident of the city of Keller, Tarrant County, State of Texas and Manu Bettegowda ("Defendant Bettegowda"), a resident of the city of Wilton, Fairfield County, State of Connecticut. *See* Original Petition of Plaintiff RPP at paragraphs. 7 and 8. The corporate defendants are as follows: Pregis Performance Products, LLC ("Defendant Pregis"), a limited liability company created and existing under the laws of the State of Delaware, and Olympus Partners, LP ("Defendant Olympus"), a

limited partnership organized and existing under the laws of the State of Delaware. See Original Petition of Plaintiff RPP at paragraphs 9 and 10.

## *Procedural History*

3. On February 25, 2018, Plaintiff RPP filed its *Original Petition, Application for Temporary Restraining Order and Injunctive Relief* with the District Court Clerk of Dallas County, Texas. The civil lawsuit was assigned cause number 141-298129-18.

4. The principal basis of this lawsuit is an alleged conspiracy by and between Defendant Tate and Defendant Bettegowda to substantially reduce the purchase price amount to be remitted by Defendant Pregis, as buyer, to Plaintiff RPP for the sale and conveyance of certain tangible and intangible business assets in exchange for the agreement of Defendant Pregis to pay certain purported bonuses to Defendant Tate and other retained employees after consummation of the sale. Plaintiff RPP seeks to recover money damages in the minimum amount of $1,000,000.00. *See* Original Petition, Section II. Monetary Relief Designation at p.2.

## *Removal of State Court Action Sought*

5. Defendant Tate files this notice of removal within the thirty (30) calendar period required by 28 U.S.C. § 1446(b). *Board of Regents of Univ. of Texas System v. Nippon Telephone & Telegraph Corp.*, 478 F.3d 274, 278 (5th Cir. 2007).

## *Basis for Removal*

6. Removal is proper, because complete diversity exists between the currently named parties to this civil action.  28 U.S.C §1332a; *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899-900 (9th Cir. 2006). Plaintiff RPP is a Michigan limited liability company;

whereas, the individuals and entities named as defendants were formed or domiciled within the states of Texas, Connecticut and Delaware. Furthermore, Plaintiff RPP seeks to recover money damages not less than $1,000,000 which amount is substantially greater than the $100,000 amount in controversy requirement. *See* Original Petition, Section II. Monetary Relief Designation at p.2.

7.      Removal of the state court action to the US District Court for the Northern District of Texas is further supported by the fact that Defendant Bettegowda, Defendant Pregis and Defendant Olympus collectively entered a special appearance pursuant to Rule 120a of the Texas Rules of Civil Procedure. [Note: Counsel for Defendants Bettegowda, Pregis and Olympus failed to serve a copy of this jurisdictional challenge upon counsel for Defendant Tate and such pleading is not currently available for online viewing to counsel for Defendant Tate.]

8.      Except for the Rule 120a special appearance, the only live pleadings filed in the state court lawsuit are those submitted by Plaintiff RPP, to-wit: *Original, Petition and Application for Temporary Restraining Order and Injunctive Relief* and *Emergency Motion for Expedited Discovery*. As required by 28 USC § 1446(a), true and complete copies of these pleadings are marked and attached to this notice as Exhibit "A-1" and Exhibit "A-2", respectively.

9.      The application of RPP for the issuance of a temporary restraining order was granted on the same day as the suit was filed and a temporary restraining order was issued on February 26, 2018. [Note: Plaintiff RPP was aware of the existence of counsel for **all** defendants and elected to proceed forward on inadequate notice.] As required by 28 USC

§ 1446(a), true and complete copies of the temporary restraining orders issued to each named defendant are collectively marked and attached to this notice as <u>Exhibit "B"</u>.

10.     Venue is proper in this district under 28 U.S.C. § 1441(a), because the state district court in which the subject suit is pending is located within district.

11.     Defendant Tate, by and through his counsel, will promptly file a copy of this notice of removal (with the attached exhibits) with the clerk of the 141st Judicial District Court in and for Tarrant County, Texas.

*Jury Demand*

12.     As of the date of this notice, Plaintiff RPP has not submitted any demand for a jury trial.

*Conclusion*

For the reasons previously stated, defendant James Donald Tate asks the Court to remove the referenced state court civil lawsuit to the United States District Court for the Northern District of Texas, Fort Worth Division.

Respectfully submitted,

*/s/ Randy Ford Taub*
Randy Ford Taub [TX Bar # 19679330]
LAW OFFICE OF RANDY FORD TAUB
14114 North Dallas Pkwy, Suite 605
Dallas, Texas 75224
Office telephone: (972) 691-7600
Office facsimile (972) 691-7601
Cellular: (940) 395-9920
Office email: rftaublegal@gmail.com
ATTORNEY FOR DEFENDANT
JAMES DONALD TATE

<u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that, on Saturday, March 3, 2018, a true and complete copy of the foregoing *Notice of Removal* (with exhibits attached thereto) was served upon all counsel of record at their respective office addresses by means of USPS First Class Mail.

*<u>/s/ Randy Ford Taub</u>*
Randy Ford Taub [TX Bar # 19679330]
ATTORNEY FOR DEFENDANT,
JAMES DONALD TATE

---

**EXHIBIT "A-1"**

**Original Petition and Application for Temporary Restraining Order
And Injunctive Relief**

FILED
TARRANT COUNTY
2/26/2018 9:56 AM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. _____141-298129-18_____

| | | |
|---|---|---|
| REX PERFORMANCE PRODUCTS, LLC, | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | |
| | § | _____ JUDICIAL DISTRICT |
| JAMES DONALD TATE, MANU | § | |
| BETTEGOWDA, PREGIS | § | |
| PERFORMANCE PRODUCTS, LLC, | § | |
| and OLYMPUS PARTNERS, L.P., | § | |
| *Defendants.* | § | TARRANT COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION, APPLICATION FOR TEMPORARY RESTRAINING ORDER AND FOR INJUNCTIVE RELIEF

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff and Applicant REX PERFORMANCE PRODUCTS, LLC (hereinafter "RPP") and files this its Original Petition, Application for Temporary Restraining Order and for Injunctive Relief complaining of Defendants JAMES DONALD TATE (hereinafter "Tate"), MANU BETTEGOWDA (hereinafter "Bettegowda"), PREGIS PERFORMANCE PRODUCTS, LLC (hereinafter "Pregis"), and OLYMPUS PARTNERS, L.P. (hereinafter "Olympus") (hereinafter collectively referred to as "Defendants"), and in support of same would respectfully show the Court as follows:

### I.

### INTRODUCTION

1.     This is a sad tale of a professional who forgot the admonition of King David when he wrote, "the integrity of the upright will guide them, but the crookedness of the treacherous will destroy them."[1]

---

[1] Proverbs 11:3

2.      In this account of self-dealing more fitting for a business school case study than an account of actual events, we have Defendant Tate, the President of the Plaintiff who is also a minority owner, negotiating the sale of Plaintiff's assets to Defendant Pregis. However, in that process Defendant Tate secretly negotiated a side deal for himself in the amount of $1.5 million in exchange for driving the price of the sale down for Pregis. This side deal was not disclosed to the board of Plaintiff and was only discovered by Plaintiff in reviewing Tate's emails as part of its due diligence to close the sale.

3.      This side deal, termed a "Super Bonus" by Tate and his joint tortfeasors, was compensation for Tate's double-dealing in convincing the owners of Plaintiff to reduce the sales price. Defendant Tate cannot respond in damages and if this Court does not enjoin the payment of the $1.5 million to Tate plaintiff will be irreparably harmed. "Better is a little with righteousness than great income with injustice."[2]

## II.

## MONETARY RELIEF DESIGNATION

4.      In accordance with TEXAS RULE CIVIL PROCEDURE 47, the Plaintiff hereby gives notice that it seeks monetary relief of over $1,000,000, including damages of any kind, penalties, costs, expenses pre-judgment interest, and attorney's fees and all such other and further relief to which Plaintiff may show itself to be justly entitled. The Plaintiff further seeks injunctive relief.

---

[2] Proverbs 16:8

### III.

### DISCOVERY CONTROL PLAN

5.  Plaintiff pleads that discovery should be conducted in accordance with a Level 2 discovery control plan pursuant to TEXAS RULE OF CIVIL PROCEDURE 190.3.

### IV.

### PARTIES

6.  Plaintiff REX PERFORMANCE PRODUCTS, LLC is a Limited Liability Company organized and existing under the laws of the State of Michigan whose principal place of business is in Marysville, Michigan.

7.  Defendant JAMES DONALD TATE is an individual who may be served at 1406 Diar Lane, Keller, Texas, 76248 or wherever he may be found.

8.  Defendant MANU BETTEGOWDA is a is an individual who may be served at 67 E. Meadow Road, Wilton, Connecticut, 06897 or wherever he may be found.

9.  Defendant PREGIS PERFORMANCE PRODUCTS, LLC is a limited liability company organized and existing under the laws of the State of Delaware having its offices and principal place of business in the State of Illinois. Defendant may be served by and through its Registered Agent, The Corporation Trust Company at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801 or wherever it may be found.

10. Defendant OLYMPUS PARTNERS, L.P. is a limited partnership organized and existing under the laws of the state Delaware. In accordance with TEXAS CIVIL PRACTICE AND REMEDIES CODE § 17.022, service may be made upon the Defendant by serving Manu Bettegowda, an individual who holds himself out as a partner of Defendant at One Station Place, 4th Floor, Stamford Connecticut, 06902 or wherever he may be found.

## V.

## <u>JURISDICTION AND VENUE</u>

11.    Jurisdiction is proper in this Court because the amount in controversy exceeds the jurisdictional minimum of this Court and concerns the protection of property that, upon information and belief, is physically located within the State of Texas.

12.    Jurisdiction is proper over the non-resident Defendants under the Texas long arm statute, TEXAS CIVIL PRACTICE & REMEDIES CODE §17.041 and § 17.042, because this suit includes numerous business torts enumerated below which were committed in whole or part in Texas by said Defendants.   Therefore, Defendants have satisfied the minimum contacts requirement and purposefully availed themselves of the privileges and benefits of conducting business in Texas.   Moreover, jurisdiction is proper in this Court because all non-resident Defendants are joint-tortfeasors who knowingly participated and induced a breach of JAMES DONALD TATE'S fiduciary duty to Plaintiff and Defendant TATE, a resident of Tarrant County, Texas, committed these torts in Tarrant County, Texas. This Court's jurisdiction is therefore proper as to all parties. *See Kinzbach Tool Co. v. Corbett-Wallas Corp.*, 160 S.W.2d 509, 514 (Tex. 1942).

13.    Venue is proper in Tarrant County, Texas, because one or more of the claims and disputes between the parties arose in Tarrant County, Texas.   Venue is also proper because Defendant JAMES DONALD TATE, a natural person, resides in Tarrant County. Venue is therefore proper in accordance with TEXAS CIVIL PRACTICE AND REMEDIES CODE § 15.002(a)(2) and § 15.005.

## VI.

### EVIDENCE IN SUPPORT OF PETITION AND APPLICATION

14.    Plaintiff attaches the following in support of its Petition and Application for Injunctive Relief which are incorporated herein by reference:

    **Exhibit 1**:   Email exchange between Defendant Donald Tate and Rex Hansen beginning January 15, 2018;

    **Exhibit 2**:   Email exchange between Defendant Donald Tate and Michael Cuffia beginning January 18, 2018;

    **Exhibit 3**:   Email exchange between Defendants Donald Tate and Manu Bettegowda beginning January 19, 2018;

    **Exhibit 4**:   Email exchange between Defendant Donald Tate and Michael Cuffia on January 21, 2018;

    **Exhibit 5**:   Email exchange between Defendants Donald Tate and Manu Bettegowda on January 21, 2018;

    **Exhibit 6**:   Email exchange between Defendants Donald Tate, Manu Bettegowda and Michael Cuffia beginning January 23, 2018;

    **Exhibit 7**:   Spreadsheet created by Defendant Tate regarding potential calculations of equity payments under different sales prices of RPP and different ownership percentages;

    **Exhibit 8**:   Affidavit of Rex Hansen, a member of Plaintiff's management team; and

    **Exhibit 9**:   Affidavit of Steve Bishop, an expert in Mergers and Acquisitions.

## VII.

## **BACKGROUND FACTS**

### THE CAST OF CHARACTERS

15.  **REX PERFORMANCE PRODUCTS, LLC** (**Plaintiff**) is a premier manufacturer of polyethylene foam that employs industry professionals supported by top-notch customer service representatives.  RPP is in the business of creating lasting partnerships, producing quality foam, and is dedicated to understanding the individual business requirements of our customers to deliver value-added solutions. RPP is an organization built upon quality, competitive pricing, and quick-to-market concepts. RPP is an industry leader in the production of Polyethylene Foam. Polyethylene Foam is the primary material used to protect goods during shipping.  With the explosion of the online marketplace, producers of Polyethylene Foam face tremendous potential for massive growth. RPP was formed as a Michigan Limited Liability Company in 2011. At the time that RPP was organized, the sole member was Willamette Holdings, LLC.[3]

16.  **WILLAMETTE HOLDINGS, LLC** is a Michigan Limited Liability Company, formerly known as Big Deal, LLC, which now owns 63% of the membership interest in RPP. Willamette Holdings, LLC is itself owned equally by three members, Rex Hansen, John Ballinger, and Rob Story.  Any and all predecessor entities not specifically listed herein that at one time owned a membership interest in RPP are now wholly owned by Willamette Holdings, LLC.[4]

---

[3] See ¶ 3, Exhibit 8, Affidavit of Rex Hansen, Authorized Corporate Representative of Rex Performance Productions, LLC attached hereto and incorporated herein by reference as "Hansen Affidavit."
[4] See ¶ 4, Exhibit 8, Hansen Affidavit.

17.   **EMERALD PEAK GROUP, LLC** is a Michigan Limited Liability Company which now owns 1% of the membership interest in RPP. EMERALD PEAK GROUP, LLC is itself owned equally by Rex Hansen and Heidi Hansen.[5]

18.   **JAMES DONALD TATE (Defendant, primary bad actor, and breacher of his fiduciary duties to his employer through self-dealing)** is the President and CEO of RPP (Plaintiff). Defendant Tate was hired to be President and Chief Executive Officer of RPP in January, 2011. On or about June 5, 2012, the owners of RPP executed the Donald Tate Equity Award Agreement, which granted to Tate a 10% equity position in the profits of RPP, retroactive to June 1, 2012. Tate received an additional 5% equity position in RPP each year from December 31, 2012 through December 31, 2014.  Through all incentives that have accumulated over the years, Tate now holds a 22% membership interest in RPP. Tate is well known in the small Polyethylene Foam production industry due to his nearly 30 years working for the industry leader, Sealed Air Corporation. Mr. Tate lives in Keller, Texas.[6]

19.   **MICHAEL CUFFIA (co-conspirator; not a party, yet)** is the Director Operations of RPP (Plaintiff). Cuffia was hired to be Director of Operations of RPP in 2014. On or about June 1, 2015, the owners of RPP executed the Michael Cuffia Equity Award Agreement, which granted to Cuffia a 7% equity position in the profits of RPP, retroactive to May 1, 2015.  Cuffia received an additional 1% equity position in RPP each year from December 31, 2015 through December 31, 2017. To date, Cuffia holds approximately a 10% membership interest in RPP.[7]

---

[5] See ¶ 5, Exhibit 8, Hansen Affidavit.
[6] See ¶ 6, Exhibit 8, Hansen Affidavit.
[7] See ¶ 7, Exhibit 8, Hansen Affidavit.

20.    **JEFF SMITH (possible bad actor; not a party, yet)** is the Director of Engineering of RPP (Plaintiff). Smith was hired to that position with RPP in 2015. On or about June 1, 2015, the owners of RPP executed the Jeff Smith Equity Award Agreement, which granted to Jeff Smith a 2% equity position in the profits of RPP on June 1, 2016. Smith received (and is scheduled to receive) an additional 1% equity position in RPP each year from December 31, 2016 through December 31, 2018.[8]

21.    **PREGIS PERFORMANCE PRODUCTS, LLC (Defendant, bad actor, joint tortfeasor, and co-conspirator)** purchased all the assets of RPP through an asset purchase agreement executed on February 23, 2018. Pregis is a leading provider of innovative protective packaging materials and systems headquartered in Chicago that operates multiple North American manufacturing and warehousing facilities devoted to protective packaging solutions. Pregis works not only in Polyethylene Foam, but with other materials as well. Pregis' desire to purchase RPP was twofold: (1) by purchasing the assets of RPP Pregis eliminates a competitor in the marketplace; and (2) the purchase of RPP's assets resulted in the acquisition of superior technology utilized by RPP in producing Polyethylene Foam as opposed to the processes currently utilized by Pregis. Pregis has been attempting to purchase RPP since November, 2016.[9]

22.    **OLYMPUS PARTNERS, L.P. (bad actor, joint tortfeasor, and co-conspirator)** owns Pregis. Olympus is a private equity firm that provides equity capital for middle market management buyouts and for companies needing capital for expansion. Olympus is an active, long-term investor across a broad range of industries, including restaurants,

---

[8] See ¶ 8, Exhibit 8, Hansen Affidavit.
[9] See ¶ 9, Exhibit 8, Hansen Affidavit.

consumer   products,   healthcare   services,   financial   services   and   business services. Olympus acquired Pregis in May, 2014.[10]

23.     **MANU BETTEGOWDA (Defendant, bad actor, joint tortfeasor, mastermind, and co-conspirator)** is a Partner at Olympus and Pregis is in his portfolio of businesses. According to the Olympus website, Bettegowda has worked with Olympus since 1998 and became a partner in 2005. During all relevant periods in this matter, Defendant Bettegowda acted as Partner for Olympus and agent for Pregis, Olympus' wholly owned subsidiary.  Bettegowda conspired with Tate to drive down the purchase price of RPP and agreed to pay Tate, Cuffia, and Smith a secret "Super Bonus" in exchange for reducing the sales price of RPP.[11]

### THE SALE

24.     In November, 2016, Bettegowda, as agent for Pregis approached RPP regarding the possibility of purchasing all of the assets of RPP. Formal discussions ensued and all parties began conducting due diligence into the transaction. However, in February 2017, the parties terminated discussions and walked away from the potential transaction. As of February, 2017, the price to purchase all of the assets of RPP under discussion was $24 million.[12]

25.     Then, in December, 2017, Pregis returned to reopen negotiations with RPP regarding the asset purchase. However, this time, instead of approaching RPP as a whole, Pregis approached Donald Tate, RPP's President and Chief Executive Officer, directly. Tate then relayed Pregis's renewed interest to the other members of RPP. After consultation among the members, Tate was entrusted with the responsibility of negotiating the sale

---

[10] See ¶ 10, Exhibit 8, Hansen Affidavit.
[11] See ¶ 11, Exhibit 8, Hansen Affidavit.
[12] See ¶ 12, Exhibit 8, Hansen Affidavit.

and was authorized to approach Pregis with an offer to sell all the assets of RPP to Pregis for a purchase price of $20 million.[13]

26.    Presumably, Defendant Tate then relayed the $20 million offer to Pregis. On January 15, 2018, Tate flew to Chicago, the home office of Pregis, to meet with Pregis personnel to discuss the asset purchase. When he returned, he advised the other Members of RPP that Pregis would offer no more than $18 million for the assets of RPP. However, for reasons unknown, Tate quickly reduced that offer to $17 million on January 18, 2018. At the time, Tate was adamant that $17 million dollars was the best price RPP was going to receive and strongly encouraged the other Members to accept the offer.[14]

27.    Throughout the entire process, all of the negotiations with Pregis went through Tate. He, as President and CEO, had sole control over negotiations and communications.  The only communications that any other member of RPP had regarding the asset purchase were de minimis communications with Olympus regarding due diligence. Tate had total control over negotiation of the asset purchase of RPP.[15]

28.    After consultation, the members of RPP, including Tate, agreed to accept the purchase price of $17 million based on Tate's strong recommendation and a letter of intent was signed on or about January 21, 2018.[16]

29.    The sale was effectuated and Pregis purchased the assets of RPP with contracts executed on February 23, 2018 and closing taking place that same day.[17]

---

[13] See ¶ 13, Exhibit 8, Hansen Affidavit.
[14] See ¶ 14, Exhibit 8, Hansen Affidavit.
[15] See ¶ 15, Exhibit 8, Hansen Affidavit.
[16] See ¶ 16, Exhibit 8, Hansen Affidavit.
[17] See ¶ 17, Exhibit 8, Hansen Affidavit.

### A PLOT REVEALED

30.    Without any disclosure to the other members of RPP, Tate negotiated a side-deal with Pregis, Olympus, and Bettegowda in secret for himself, Michael Cuffia, and Jeff Smith. This apparently happened at the meeting held between Bettegowda and Tate based on Plaintiff's Exhibit 2 attached hereto. It is possible that other parties are also beneficiaries of this secret side deal.[18]

31.    In the process of reviewing items for due diligence and matters related to the closing of the business, numerous emails were discovered on Tate's work email address whereby he, an officer and member of RPP, negotiated a secret deal with Pregis, through Manu Bettegowda of Olympus, whereby Tate and others would receive a "Super Bonus" to the tune of $1.5 million as compensation separate and apart from job-related compensation in exchange for driving the sales' price of RPP down from $20 million to $17 million.[19]

32.    Tate himself explains that his motivations for stealing from his own company are that he was dissatisfied with the compensation he would receive as an equity owner in RPP. He thought he should receive more money than others with a greater percentage of membership interest simply because he felt he worked harder. On January 15, 2018, the same date Tate travelled to Chicago to discuss the sale with Pregis, Tate emailed Rex Hansen to say:

>   I look at [the deal] and say, hmmm are the ownership percentages [in RPP] representative of the time, effort, sacrifices and commitment put forth by such individuals [including myself]. Easy for me to rank accordingly, but I'd rank #1 D Tate #1A R Hansen #3 M Cuffia #4 Jeff Smith #5 J Ballinger #6 Rob. . .

***

---

[18] See ¶ 18, Exhibit 8, Hansen Affidavit.
[19] See ¶ 19, Exhibit 8, Hansen Affidavit.

<u>I'm very dissatisfied with less than $2 million [for myself]</u>.[20]

In short, Tate wanted more money than three individuals that collectively owned 63% of the membership interest in RPP. Those individuals (1) personally guaranteed all debts of RPP (Tate personally guaranteed nothing) and (2) Rex Hansen, John Ballinger, and Rob Story personally guaranteed or funded over $16 million in financing to RPP. Moreover, Tate received executive compensation in the form of salary of approximately $200,000.00 per year plus bonuses for his role as President and Chief Executive Officer of RPP and no other member of RPP received any salary for their efforts beyond Cuffia and Smith, who were also employees. The next day, Tate forwarded the email exchange attached as Exhibit 1 to his personal email account abtate31@yahoo.com.[21] Then, if not sooner, Tate began a plan to steal from his own company that was further set in motion at the Chicago meeting with Bettegowda on January 15, 2018.

33.     On January 18, 2018, Tate began corresponding with Michael Cuffia, another executive who was complicit in breaching his fiduciary duties regarding the negotiation of the "Super Bonus" whereby Tate clearly states the "Super Bonus" would be "guaranteed and paid separately from any salary/bonus package for the jobs offered and paid" within one year.[22]

---

[20] See ¶ 20, Exhibit 8, Hansen Affidavit. See also Exhibit 1
[21] See ¶ 20, Exhibit 8, Hansen Affidavit. See also Exhibit 1: a true and correct copy of the full email correspondence between Tate and Rex Hansen attached hereto and incorporated herein by reference (emphasis added).
[22] See ¶ 21, Exhibit 8, Hansen Affidavit. See also Exhibit 2: a true and correct copy of the full email correspondence between Tate and Michael Cuffia attached hereto and incorporated herein by reference.

34.     The negotiation of a "Super Bonus" was a secret that was never disclosed by Tate, Cuffia, or Smith to any of the other members of RPP.  Instead, Tate, Cuffia, and Smith chose to accept their share of the "Super Bonus" for their own personal gain.[23]

35.     At least as early as January 19, 2018, and likely earlier, it is clear that Bettegowda (a partner of Olympus), Olympus and Pregis encouraged and participated in this scheme. The fact that the "Super Bonus" was meant to be concealed from the other members of RPP is made clear when Tate, in a series of emails to Bettegowda, unequivocally reaffirmed the need to conceal the existence of the "Super Bonus" from the other members of RPP and further tied the "Super Bonus" to the reduced sales price of RPP:

> The Purchase Price of $17 million would be paid to [RPP] and a separate and additional bucket of $1.5 million would be set aside and payable as "super bonus" to [those staying on with the sale].
>
> ***
>
> [Bettegowda and Tate] talked about keeping this super bonus very confidential and private from the deal itself, since it is a[n] … incentive [for those staying on with the sale].
>
> ***
>
> Rex [Hansen] has been adamant around getting $20 million for the business, but us equity owners have persuaded him to consider $18 and then we put a bit more pressure on him for the $17 ***with [our] knowledge that there would be [super] bonuses for those staying with the sale.***[24]

Clearly, Tate negotiated a side deal for him and his "team" to receive a $1.5 million "super bonus," after Tate successfully "persuaded" RPP to accept $17 million instead of

---

[23] See ¶ 22, Exhibit 8, Hansen Affidavit.
[24] See ¶ 23, Exhibit 8, Hansen Affidavit. See also Exhibit 3: a true and correct copy of the email exchanges between Tate and Bettegowda attached hereto and incorporated herein by reference.

"$20 million for the business" because he was unhappy with the amount of money he would realize from the sale as an equity owner.[25]

36.     Moreover, Tate and Cuffia, executives and equity owners of RPP, clearly tied their intentional efforts to drive down the sales price of RPP together with their secret "Super Bonus" compensation. In fact, on January 21, 2018, they even took the time to exchange emails in an attempt to determine which way they would get the most 'up front' money:

> **Tate:**     If [Pregis will] agree with 30% superbonus up front, it's a
> lil more than the difference between $17 and $18.
>
> **Cuffia:**   Yeah that's cool.  Although spreading some to next [year]
> is not too bad from a tax standpoint…!!![26]

Tate's designs become even more apparent when a spreadsheet was discovered in Tate's emails where he calculates exactly what his equity compensation would be if his "membership shares" were increased to 59.44%.[27] In short, it appears that Tate was calculating what exact compensation he would accept in the "Super Bonus" in exchange for driving the sales price of RPP down.[28]

37.     Further, it was discovered that on January 21, 2018, Tate sent an email to Bettegowda where the first word is "confidential" again reiterating how important it was that the "Super Bonus" remain secret and further outlining the agreement between himself, Pregis, Olympus, and Bettegowda regarding their plan to reduce the sales price of RPP in exchange for $1.5 million:

> Any [further] discounting from the purchase price of $17
> million will most likely kill the deal.   Additionally…a

---

[25] *Id.*
[26] See ¶ 24, Exhibit 8, Hansen Affidavit. See also Exhibit 4: true and correct copy of the January 21, 2018 email exchange between Tate and Cuffia attached hereto and incorporated herein by reference.
[27] See ¶ 24, Exhibit 8, Hansen Affidavit. See also Exhibit 7: true and correct copy of that spreadsheet attached hereto and incorporated herein by reference.
[28] *Id.*

> Super Bonus program has been offered and will be separate
> and independent of this purchase agreement ***and will
> remain totally confidential and separated from the ...
> purchase sell documents.***[29]

Clearly Bettegowda, Olympus, and Pregis were complicit in this deception.[30]

38.     Finally, on January 23, 2018, correspondence between Tate and Bettegowda reveals the deceit on the part of all parties where Tate, while attempting to negotiate additional "Super Bonuses" agrees "[i]f paying these individuals, beyond me, Michael [Cuffia], and Jeff [Smith] is problematic for the company, then no worry, we will pay them individually from our proceeds so that the company is not liable for it."[31]

### DEFENDANTS ARE ATTEMPTING TO DESTROY THE EVIDENCE

39.     As part of his employment with RPP, Defendant Tate utilizes a laptop computer for which he was reimbursed by RPP. That laptop computer will soon be in the care, custody, and control of the Defendants, if it is not already. After learning of Tate's deceit and discovering the emails attached to Plaintiff's Original Petition, Plaintiff briefly obtained Tate's laptop in order to image the laptop both (1) to preserve evidence and (2) as part of its due diligence in effectuating the sale of RPP's assets. Through this process, Plaintiff discovered that Defendant Tate has already attempted to destroy evidence of his wrongdoing by intentionally downloading "Ransomware" malware to destroy his email and files on his laptop. It is believed that Tate's downloading of the "Ransomware" virus on his computer was intentional. While Plaintiff believes that Tate's attempt was unsuccessful, and the data can be recovered, it is clear that Tate is willing and able to

---

[29] See ¶ 25, Exhibit 8, Hansen Affidavit. See also Exhibit 5: true and correct copy of the email exchange between Tate and Bettegowda attached hereto and incorporated herein by reference.
[30] *Id.*
[31] See ¶ 26, Exhibit 8, Hansen Affidavit. See also Exhibit 6: a true and correct copy of the email correspondence discovered in Tate's work email attached hereto and incorporated herein by reference.

destroy evidence and thereby conceal his cuL.P.ability. Moreover, as the asset purchase of RPP is fully realized, most of the evidence of the Defendants' tortious conduct will be solely in the possession of the Defendants. Accordingly, Plaintiff will suffer irreparable harm if Defendants are not prevented from any further attempts to destroy the evidence of their misdeeds.[32]

## VIII.

## CAUSES OF ACTION

### A.   BREACH OF COMMON LAW FIDUCIARY DUTY AGAINST DEFENDANT JAMES DONALD TATE

40.   Plaintiff RPP and Defendant Tate have a special relationship. Tate was placed in a position of trust and authority within RPP and tasked with negotiating the best possible deal for the purchase of the assets of RPP by Pregis. Tate was the President, Chief Executive officer, and holds a 22% membership interest in RPP. As an officer and member, Tate owed a fiduciary duty to act in the best interest of RPP. *International Bankers Life Ins. V. Halloway*, 368 S.W.2d 567, 576 (Tex. 1963). Defendant Tate owed a duty not to usurp corporate opportunities for personal gain; a duty of utmost good faith in the officer's relations with the corporation; a duty of full disclosure of any personal interest the officer or director has in the subject matter of a contract the officer or director negotiates with the corporation; a duty of loyalty; and a duty to use uncorrupted business judgment for the sole benefit of the corporation. *Id.* See also, *Cotton v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 698 (Tex.App.—Fort Worth 2006, pet. denied). Defendant Tate breached his fiduciary duty to Plaintiff.[33]

---

[32] See ¶ 33, Exhibit 8, Hansen Affidavit
[33] See ¶ 27, Exhibit 8, Hansen Affidavit.

41.     Texas has long recognized that employees owe their employers a common law fiduciary duty of loyalty. *Kinzbach Tool Co. v. Corbett-Wallas Corp.*, 160 S.W.2d 509 (Tex. 1942); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193 (Tex. 2002).   Fiduciary duties are imposed by Courts on some relationships because of their special nature. Employers have a common law right to require employees to act in good faith towards its employer:

    a.   To not personally profit arising out if that employee's employment.

    b.   To not to compete with the employer on the employee's own account or for another in matters relating to the subject matter of employee's employment.

    c.   To act solely for the benefit of his employer during the scope of his employment. 73 S.W.3d at 200.

During their employment, employees owe a common law fiduciary duty to their employers and are obligated to act in their employer's best interest. *Johnson*, 73 S.W.3d at 201-02.   When an employee who was approached by a competitor of his employer for assistance in selling a contract right to his employer at the highest price owed a duty of full disclosure when encouraging his employer to buy the contract rights. *Kinzbach Tool Co.*, 160 S.W.2d at 513-14.

42.     Defendant Tate concealed from or failed to disclose certain facts to Plaintiff RPP. Defendant Tate knew the Plaintiff was ignorant of the facts and did not have an equal opportunity to discover the facts. Defendant Tate was deliberately silent when it had a duty to speak.   Defendant Tate is currently working on behalf of a competing company

without disclosure or approval and used his position and deception to give a competitor an advantage.[34]

43.    Defendant Tate is further liable for self-dealing through negotiating a side-deal for himself to the detriment of RPP. Defendant Tate failed to use uncorrupted business judgment to act in the best interest of RPP.[35]

44.    Instead of acting as a proper fiduciary to RPP, Defendant Tate engaged in a conspiracy with competitors of his company, and negotiated a secret deal for payment of $1.5 million in exchange for driving down the price of the assets of his own employer by $3 Million.

45.    As evidenced in the affidavit of Steve Bishop[36] attached hereto as Exhibit 9, Defendant Tate engaged in secret negotiations regarding a side deal with the acquiring entities, and specifically Defendant Manu Bettegowda, that is far outside the normal conduct in acquisitions of this nature. It is obvious the Defendants' secret deal was not to be disclosed to RPP employer, as evidenced by Exhibit 5 attached hereto. Mr. Bishop, who has over 20 years of experience as an advisor on transactions like this one, affirms that although negotiations between the acquiring entity and its target's executive team are common, these negotiations are always conducted in the open where they can be examined by the seller.[37] In this way the target's executive team discharge their obligations to their employer, to wit: the duties of loyalty and utmost good faith, candor, fair and honest dealing, of full disclosure, etc.[38]

---

[34] See ¶ 28, Exhibit 8, Hansen Affidavit.
[35] See ¶ 28, Exhibit 8, Hansen Affidavit.
[36] Steve Bishop is an expert in strategic acquisitions, mergers and divestitures. A full explanation of his qualifications can be found in ¶¶ 2-3 of Exhibit 9.
[37] See ¶ 6, Exhibit 9, Bishop Affidavit.
[38] *Id.*

46.   Mr. Bishop has observed past incidents where executives engage in the behavior like that of Defendant Tate in this case and, in those instances, the executive's employment was terminated for cause upon discovery of these nefarious acts.[39]

47.   Mr. Bishop further testifies that a retention bonus of $1.5 million (the "Super Bonus") merely to heL.P. secure 12 months of continued employment is grossly disproportional to the sums normally paid to retain an executive only earning $250,000 year.[40]

48.   Having reviewed and the totality of the circumstances, it is Mr. Bishop's opinion, as a merger and acquisition specialist, that the "Super Bonus" paid to Tate is not a payment to retain executives, but is more akin to a payment for brokering a transaction. In short, Tate *et. al.* are being paid $1.5 Million by Defendants Pregis, Olympus, and Bettegowda to breach his fiduciary duty to drive down the price of the asset sale of RPP.

49.   Defendant Tate's breach of his fiduciary duty to RPP resulted in both injury to Plaintiff and benefit to Defendant Tate within the jurisdictional limits of this Court.

**B.    LIABILITY AS TO ALL DEFENDANTS AS JOINT TORTFEASORS**

50.   A party that knowingly induces a fiduciary to breach a duty, or participates in the breach, can be held liable as a joint tortfeasor. *Kinzbach Tool Co.*, 160 S.W.2d at 514. Defendants Pregis, Olympus, and Bettegowda, though owing no duties to RPP of their own, knowingly induced and participated in Tate's breach of his fiduciary duties to RPP by offering a secret contract with Tate, Cuffia, and Smith to pay them $1.5 Million in exchange for Tate using his position of authority and contract to make blatant misrepresentations to his fiduciary RPP, in order to drive down the price of the asset sale.

---

[39] See ¶ 7, Exhibit 9, Bishop Affidavit.
[40] See ¶ 9, Exhibit 9, Bishop Affidavit

51.     Defendant Pregis, Olympus, and Bettegowda's knowing inducement and participation in this joint enterprise caused damages to Plaintiff within the jurisdictional limits of this Court.

**C.     CONSPIRACY AGAINST ALL DEFENDANTS**

52.     Defendants were members of a combination of two or more persons. The object of the combination was to accomplish an unlawful purpose in breaching Defendant Tate's fiduciary duty in order to drive the sales' price of the assets of RPP down in exchange for a secret "Super Bonus" to be paid to Tate and his co-conspirators Cuffia and Smith. The members had a meeting of the minds on the object or course of actions.

53.     The current state of the evidence exhibits that Defendant Tate and Defendants Olympus, Pregis, and Bettegowda engaged in a conspiracy to use Tate's position as President, CEO, and shareholder in RPP to drive down the purchase price for the assets of RPP in exchange for additional secret compensation to Tate, Cuffia, and Smith.[41]

54.     Defendants Olympus, Pregis, and Bettegowda have no motive not to harm Plaintiff RPP. Defendants Olympus, Pregis, and Bettegowda have clearly intentionally conspired with Defendant Tate and their illegal acts, deception, and theft have given them and unfair advantage over Plaintiff RPP, and they have profited from Tate's nefarious actions by saving money on the purchase that they were able to use to further entice Tate, Cuffia, and Smith to stay after the purchase.[42]

55.     As a result of the conduct claimed herein above, the Plaintiff has suffered injury as a proximate result of the wrongful act within the jurisdictional limits of this Court.

---

[41] See ¶ 30, Exhibit 8, Hansen Affidavit.
[42] See ¶ 31, Exhibit 8, Hansen Affidavit.

## IX.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION AND PERMANENT INJUNCTION

56.    Plaintiff hereby incorporates by reference all of the allegations previously contained in this Petition as if fully set out herein verbatim.

57.    Plaintiff relies upon the affidavit of Rex Hansen, Authorized Representative of Plaintiff RPP in support of Plaintiffs' Application For Temporary Restraining Order and for Injunctive Relief, and the exhibits attached hereto and incorporated by referenced herein for all purposes. Plaintiff would further show that it is entitled to temporary injunctive relief upon notice and hearing and (a) Plaintiff has a probable right to relief it seeks at a final trial on the merits; (b) the harm is imminent (c) Plaintiff will suffer irreparable injury; and (d) unless the Court intercedes, there will be no adequate remedy at law.

### A.    PLAINTIFF HAS A PROBABLE RIGHT TO RELIEF

58.    Plaintiff has proven herein that there is already, without the benefit of discovery, ample evidence for each of its causes of action through Affidavits and Exhibits and Plaintiff is therefore likely to succeed. *DeSantis v. Wackenhut Corp.* 793 S.W.2d 670, 686 (Tex. 1990). See paragraphs 13-36 specifically.

59.    The current state of the evidence exhibits that Defendant Tate and Defendants Olympus, Pregis, and Bettegowda engaged in a conspiracy to use Tate's position as President, CEO, and shareholder in RPP to drive down the purchase price for the assets of RPP in exchange for additional secret compensation to Tate, Cuffia, and Smith.[43] In exchange, Defendants Olympus, Pregis, and Bettegowda are taking $1.5 million of the money they saved through Tate's breach of his fiduciary duty and paying it directly to Tate in the

---

[43] See ¶ 30, Exhibit 8, Hansen Affidavit.

form of a payment the Defendants call a "Super Bonus" but which in reality is a broker's commission that constitutes outright theft from Plaintiff RPP. In taking such actions, Defendant Tate has breached his fiduciary duties to Plaintiff and the remaining Defendants, having knowingly participated in the breach are jointly liable both as joint tortfeasors and for the joint liability as members of a conspiracy. With the evidence attached hereto, the liability portion of Plaintiff's causes of action can already be won by and through a summary judgment motion.

**B.    HARM TO THE PLAINTIFFS IS IMMINENT**

60.    The harm to the Plaintiff is imminent. Texas law is clear, an injunction will not be issued unless it is shown that the respondent will otherwise engage in the activity enjoined. *State v. Morales*, 869 S.W.2d 941, 946-47 (Tex. 1994).

61.    Defendant Tate is on the cusp of receiving his 30 pieces of silver for his betrayal of Plaintiff RPP, if he has not received them already.[44] At a date and time in the near future that can only be learned with certainty after expedited discovery, Defendant Pregis, Olympus, and Bettegowda will pay Defendant Tate a significant portion, if not all, of the $1.5 million they have agreed to pay him for his services in driving down the sales price of the assets of RPP from inside the company. Once that money is paid, Defendant Tate will dissipate the funds and it will be impossible for Plaintiff to recover the Defendants' ill-gotten gains.

62.    Defendants Olympus, Pregis, and Bettegowda have no motive not to harm Plaintiff RPP. Defendants Olympus, Pregis, and Bettegowda have clearly intentionally conspired with Defendant Tate and their illegal acts, deception, and theft have given them and unfair

---

[44] See ¶ 32, Exhibit 8, Hansen Affidavit.

advantage over Plaintiff RPP, and they have profited from Tate's nefarious actions by saving money on the purchase that they were able to use to further entice Tate, Cuffia, and Smith to stay after the purchase.[45]   Therefore, Defendants Olympus, Pregis, and Bettegowda have no reason not to pay the promised "Super Bonus" to Defendant Tate as the parties have agreed. The assets sale was executed on February 23, 2018 and closing occurred that same day.[46] There is no obstacle that prevents Olympus, Pregis, and Bettegowda from transferring the "Super Bonus" to Tate at any time of their choosing.

### C.   PLAINTIFF WILL SUFFER IRREPARABLE INJURY

63.    Plaintiff RPP's injury is irreparable because it **will be unable to be adequately compensated in damages**. Plaintiff believes that Pregis, Olympus, and Bettegowda intend to pay at least 30% of the 'Super Bonus' to Tate imminently. Based on Plaintiff RPP's dealings in the past, Defendant Tate cannot respond in damages. Defendant Tate has been an employee of RPP for seven years and I am familiar with his salary over that time period. At no time has Tate earned more than approximately $200,000 in salary per year as an employee of RPP. Moreover, Tate is 67 years old and unlikely to continue working. In short, Tate does not have to funds to compensate RPP in damages if he is permitted to dissipate the 'Super Bonus.' I am likewise familiar with the salaries of Cuffia and Smith, which are both lower than Tate's salary. While younger, neither Cuffia nor Smith could respond in damages if they are permitted to dissipate the 'Super Bonus.' If Tate is permitted to disperse any 'Super Bonus' he receives, the funds to compensate RPP for Tate's breach of fiduciary duty will be gone forever."[47]

---

[45] See ¶ 31, Exhibit 8, Hansen Affidavit.
[46] See ¶ 17, Exhibit 8, Hansen Affidavit.
[47] See ¶ 32, Exhibit 8, Hansen Affidavit.

D.   THERE IS NO ADEQUATE REMEDY AT LAW

64.   The evidence is clear; Defendant Tate breached all of his common law fiduciary duties owed to RPP. That Defendant Tate conspired with Defendants Olympus, Pregis, and Bettegowda to drive down the price of the assets of RPP in exchange for payment of a "Super Bonus" is irrefutable.

65.   Further, as evidenced herein above, based on Plaintiff RPP's dealings with Tate in the past, Defendant Tate cannot respond in damages.[48] Moreover, one of the equitable remedies available to Plaintiff RPP for Defendant Tate's many breaches of his fiduciary duties to Plaintiff is profit disgorgement or fee forfeiture. The Court may order all profits obtained by a fiduciary to be disgorged as a result of a breach of fiduciary duty when the fiduciary usurps an opportunity properly belonging to the beneficiary or competes with the beneficiary, and the fiduciary profits or benefits in some way. See *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 873 (Tex. 2010).  However, if Defendant Tate is permitted to realize his "Super Bonus" without being restrained by the Court, he will dissipate the funds that properly belong to Plaintiff and Defendant cannot respond in damages but for the "Super Bonus."

E.   FORM OF INJUNCTIVE RELIEF REQUESTED

66.   As a direct and proximate result of the harmful conduct of the Defendants named herein, Plaintiff REX PERFORMANCE PRODUCTS, LLC requests that the Court immediately, and without notice, issue a temporary restraining order, and, upon notice and hearing as allowed by law, further make the temporary restraining order into a temporary injunction

---

[48] See ¶ 32, Exhibit 8, Hansen Affidavit.

during the pendency of the trial of this cause, and without bond or cash deposit, unless otherwise required by the Court, in the following particulars:

    a.  That Defendant JAMES DONALD TATE or any agent, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under his control or direction, be immediately restrained and enjoined from receiving, dispersing, transferring, depositing, cashing, or otherwise dissipating any "Super Bonus" or other compensation outside of Defendant's normal salary received from Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA, or any other agent, representative, subsidiary, employee, servant, officer, relative, assignee or other person acting directly or indirectly under the control of said Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA;

    b.  That Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA or any agent, subsidiary, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under their control or direction, be immediately restrained and enjoined from paying, transferring, depositing, conveying, or otherwise delivering payment of any "Super Bonus" or other compensation outside of Defendant's normal salary received from Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA, or any other agent, representative, subsidiary, employee, servant, officer, relative, assignee or other person acting directly or indirectly under the control of said

Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA so as to maintain the status quo;

c. That the Defendants JAMES DONALD TATE, PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA or any agent, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under their control or direction, be further immediately restrained and enjoined from disposing of any property in their possession that belongs to Plaintiff or which contains evidence of Defendants' bad acts, including, but not limited to, personal or work emails that are now or have ever been on their business premises or homes, files, electronic media, text messages between any of the Defendants, computers, or voicemails from any Defendant or agent or representative of any Defendant.

67. Upon the entry of the Court's temporary restraining orders and temporary injunction as allowed by law, and upon such notice as required, Plaintiff requests that upon final trial herein, that the aforesaid temporary restraining orders and temporary injunction shall thereupon be made into a permanent injunction for the protection of Plaintiff, and permanently enjoining all of the named Defendants in the following particulars.

a. That Defendant JAMES DONALD TATE or any agent, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under his control or direction, be immediately restrained and enjoined from receiving, dispersing, transferring, depositing, cashing, or otherwise dissipating any "Super Bonus" or other compensation outside of Defendant's normal salary received from Defendants PREGIS PERFORMANCE

PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA, or any other agent, representative, subsidiary, employee, servant, officer, relative, assignee or other person acting directly or indirectly under the control of said Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA;

b.  That Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA or any agent, subsidiary, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under their control or direction, be immediately restrained and enjoined from paying, transferring, depositing, conveying, or otherwise delivering payment of any "Super Bonus" or other compensation outside of Defendant's normal salary received from Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA, or any other agent, representative, subsidiary, employee, servant, officer, relative, assignee or other person acting directly or indirectly under the control of said Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA so as to maintain the status quo;

c.  That the Defendants JAMES DONALD TATE, PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA or any agent, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under their control or direction, be further immediately restrained and enjoined from disposing of any property in their possession that belongs to Plaintiff or which contains evidence of Defendants'

bad acts, including, but not limited to, personal or work emails that are now or have ever been on their business premises or homes, files, electronic media, text messages between any of the Defendants, computers, or voicemails from any Defendant or agent or representative of any Defendant.

68.     The temporary restraining order and temporary injunction sought herein shall not only be applied to the Defendants specifically named herein, but should be made an order of this Court as to any agent, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under his control or direction of the Defendants herein. The Court should order that the delivery of a copy of this Order to any person, or their actual knowledge of the content of the Order without service, shall be actual or constructive notice to that person of the orders of this Court and for which same shall be held responsible and accountable under the Court's powers of contempt.

## X.

### REQUEST FOR WAIVER OF BOND OR ALTERNATIVELY REQUEST FOR CASH DEPOSIT IN LIEU OF BOND

69.     Should the Court require bond or require a cash deposit, then Plaintiff respectfully requests that the Court allow for Darrell W. Cook & Associates, A Professional Corporation to submit a law firm check in the amount of bond or cash payment as may be paid into registry, by Order of the Court.

## XI.

### EXEMPLARY DAMAGES

70.     Plaintiff RPP'S injury resulted from Defendants' actual fraud, malice, or gross negligence. Accordingly, upon a showing, by clear and convincing evidence, of Defendants' actual fraud, malice, or gross negligence, Plaintiff hereby claims and prays

for the recovery of exemplary damages under Texas Civil Practice and Remedies Code § 41.003(a).

## XII.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff REX PERFORMANCE PRODUCTS, LLC prays that:

1. Defendants be cited to appear and answer herein as required by law; and provided with all notices as required by law.

2. the Court issue an immediate Temporary Restraining Order, without notice to Defendants, and that the Court further, upon notice and hearing as required by law, make the temporary restraining orders into a temporary injunction during the pendency of the trial of this cause, all without bond or cash payment required, unless otherwise required by the Court, and in the following particulars:

   a. That Defendant JAMES DONALD TATE or any agent, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under his control or direction, be immediately restrained and enjoined from receiving, dispersing, transferring, depositing, cashing, or otherwise dissipating any "Super Bonus" or other compensation outside of Defendant's normal salary received from Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA, or any other agent, representative, subsidiary, employee, servant, officer, relative, assignee or other person acting directly or indirectly under the control of said

Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA;

b.  That Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA or any agent, subsidiary, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under their control or direction, be immediately restrained and enjoined from paying, transferring, depositing, conveying, or otherwise delivering payment of any "Super Bonus" or other compensation outside of Defendant's normal salary received from Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA, or any other agent, representative, subsidiary, employee, servant, officer, relative, assignee or other person acting directly or indirectly under the control of said Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA so as to maintain the status quo;

c.  That the Defendants JAMES DONALD TATE, PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA or any agent, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under their control or direction, be further immediately restrained and enjoined from disposing of any property in their possession that belongs to Plaintiff or which contains evidence of Defendants' bad acts, including, but not limited to, personal or work emails that are now or have ever been on their business premises or homes, files, electronic media, text

messages between any of the Defendants, computers, or voicemails from any Defendant or agent or representative of any Defendant.

3.  That upon final trial hereof, that Plaintiff have judgment for a permanent injunction against the named Defendants herein, as follows:

a.  That Defendant JAMES DONALD TATE or any agent, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under his control or direction, be immediately restrained and enjoined from receiving, dispersing, transferring, depositing, cashing, or otherwise dissipating any "Super Bonus" or other compensation outside of Defendant's normal salary received from Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P.,  MANU BETTEGOWDA, or any other agent, representative, subsidiary, employee, servant, officer, relative, assignee or other person acting directly or indirectly under the control of said Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P.,  MANU BETTEGOWDA;

b.  That Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P.,  MANU BETTEGOWDA or any agent, subsidiary, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under their control or direction, be immediately restrained and enjoined from paying, transferring, depositing, conveying, or otherwise delivering payment of any "Super Bonus" or other compensation outside of Defendant's normal salary received from Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P.,  MANU BETTEGOWDA, or

any other agent, representative, subsidiary, employee, servant, officer, relative, assignee or other person acting directly or indirectly under the control of said Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA so as to maintain the status quo;

c.  That the Defendants JAMES DONALD TATE, PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA or any agent, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under their control or direction, be further immediately restrained and enjoined from disposing of any property in their possession that belongs to Plaintiff or which contains evidence of Defendants' bad acts, including, but not limited to, personal or work emails that are now or have ever been on their business premises or homes, files, electronic media, text messages between any of the Defendants, computers, or voicemails from any Defendant or agent or representative of any Defendant.

4.  Additionally and in the alternative, that Plaintiff and Applicant REX PERFORMANCE PRODUCTS, LLC be awarded such actual damages as a direct and proximate result of the acts or omissions of Defendants, jointly and severally, as plead herein, and within the jurisdictional limits of this Court;

5.  Additionally and in the alternative, that Plaintiff and Applicant REX PERFORMANCE PRODUCTS, LLC be awarded such equitable relief in the form of fee forfeiture or profit disgorgement as a direct and proximate result of the acts or omissions of Defendants, jointly and severally, as plead herein, and within the jurisdictional limits of this Court;

6. Additionally and in the alternative, that Plaintiff and Applicant REX PERFORMANCE PRODUCTS, LLC recover exemplary damages upon a finding of actual fraud, malice, or gross negligence as to the intentional acts or omissions of the Defendants, jointly and severally, and with the jurisdictional limits of this Court;

7. That the Defendants be found jointly and severally liable for the damages awarded to Plaintiff;

8. Reasonable attorneys' fees, at all levels of the legal process, together with pre-judgment and post-judgment interest thereon to the extend such recover is allowed by law;

9. All costs of court herein; and

10. Such other and further relief, both general and special, at law or in equity, to which Plaintiffs and Applicants may be justly entitled.

Respectfully submitted:

DARRELL W. COOK & ASSOCIATES
A PROFESSIONAL CORPORATION


/s/ Darrell W. Cook
DARRELL W. COOK
State Bar No. 00787279
dwcook@attorneycook.com
STEPHEN W. DAVIS
State Bar No. 24066792
stephen@attorneycook.com
6688 North Central Expressway, Suite 1000
Dallas, TX 75206
(214)368-4686
(214)593-5713 – Facsimile

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.30(c)</u>

Counsel for Plaintiff hereby certifies that counsel for Defendants against whom relief is sought ex parte have been notified of Plaintiff's Application for Temporary Injunction and given notice of Plaintiff's intent to present the Application to the Court for consideration.

/s/ Darrell W. Cook<br>DARRELL W. COOK

EXHIBIT 1

| | |
|---|---|
| **From:** | Don Tate |
| **To:** | abtate31@yahoo.com |
| **Subject:** | ownership |
| **Date:** | Tuesday, January 16, 2018 6:54:00 AM |

**From:** Rex Hansen [mailto:RexH@maxwellmorgan.com]
**Sent:** Monday, January 15, 2018 6:54 PM
**To:** Don Tate <D.Tate@RexPerformance.com>
**Subject:** RE: ownership

Don I understand your feelings.

Unfortunately this has not ended in the pop we all wanted.  Don't forget that Rob, John and I also signed on to all the debt.  Not just what we put in, but paying out etc.

Let's drag it across the line, and fine the next deal that costs less and makes us more!

Rex

**Rex W Hansen**

Maxwell Morgan
Strategic Finance

Managing Director, Maxwell Morgan
11560 SW 67th Ave, Suite 200W | Portland, OR 97223 |402-312-3331|fax 866-263-5646

**From:** Don Tate [mailto:D.Tate@RexPerformance.com]
**Sent:** 01/15/2018 2:17 PM
**To:** Rex Hansen <RexH@maxwellmorgan.com>
**Subject:** ownership

Thanks…

I look at it and say, hmmm are the ownership percentages representative of the time, effort, sacrifices and commitment put forth by such individuals?   Easy for me to rank accordingly, but I'd rank #1 D Tate #1A R Hansen #3 M Cuffia #4 Jeff Smith  #5 J Ballinger #6 Rob.  The other person who has literally busted his ass to help us get where we are is Nilesh; who, to me, deserves something; and we should figure out a way to get him something.  He's a person that has really been penalized for his loyalty.

I'm very dissatisfied with less than $2 million; rather pitiful showing for all the commitment, effort, time and sacrifices.

**From:** Rex Hansen [mailto:RexH@maxwellmorgan.com]
**Sent:** Monday, January 15, 2018 3:24 PM
**To:** Don Tate <D.Tate@RexPerformance.com>
**Subject:** Re: ownership

Rex rob and John equally

Rex W. Hansen
402-312-3331

On Jan 15, 2018, at 1:02 PM, Don Tate <D.Tate@RexPerformance.com> wrote:

Can you remind me of who are the owners and their shares in Willamette Holdings?

**From:** Rex Hansen [mailto:RexH@maxwellmorgan.com]
**Sent:** Monday, January 15, 2018 2:07 PM
**To:** Don Tate <D.Tate@RexPerformance.com>; John B <JohnB@Maxwellmorgan.com>
**Subject:** ownership

**Income Allocations**

| | |
|---|---:|
| Willamette Holdings | 63.12% |
| Emerald Peak | 1.00% |
| James Tate | 21.33% |
| Michael Cuffia | 9.55% |
| Jeff Smith | 5.00% |
| | 100.00% |

**Rex W Hansen**
<image001.jpg>
Managing Director, Maxwell Morgan
11560 SW 67th Ave, Suite 200W | Portland, OR 97223 |402-312-3331|fax 866-263-5646

Exhibit 2

| From: | Michael Cuffia |
|---|---|
| To: | Don Tate |
| Subject: | RE: RPP Team Compensatory Plan |
| Date: | Thursday, January 18, 2018 5:58:46 PM |

If you want to do the RPP team more than just Don, Mike and Jeff need to change below
Comments below......


**From:** Don Tate
**Sent:** Thursday, January 18, 2018 6:33 PM
**To:** Michael Cuffia <MikeC@RexPerformance.com>
**Subject:** RPP Team Compensatory Plan

I have drafted this to send to Manu... take a quick look and give me your feedback.....


We discussed a compensatory plan payable to the RPP Executive Team.  The Purchase Price
of $17million would be paid to Rex Ownership and a separate and additional bucket of $1.5
million would be set aside and payable as "super bonus" to the Executive Team for their
commitment to the Pregis Team.  The concerns/questions expressed:
- The bucket of monies (super bonus) would be guaranteed and paid separately from
  any salary/bonus package for the jobs offered and paid accordingly:
    - 30% paid as a starting bonus payable Day 1
    - 35% Paid at end of 6 months
    - 35% Paid at end of 12 months
    - All funds guaranteed paid in full immediately in the event of termination or
      resignation Include this but I'd guess they'll balk at the resignation part...
    - Not tied or aligned to any business goals.
    - The jobs offered to each individual would carry a salary and bonus separate
      from the "super bonus", and the regular bonus would be payable based upon
      the company/business goals and achievements as determined by Pregis
      Leadership.
- In the purchase agreement last year the non-compete was quite lengthy We propose
  No Non-Compete required during 1st 12 months.  The group, including me, has some
  100+ years of experience in the manufacture, product development, sales and
  marketing of packaging products/markets.  With that knowledge and experience they
  feel that they have a great deal to give and not as much to take.  The team is eager
  and excited to share and give and help in every way, but hesitant to be restricted
  from finding employment if the Pregis Team doesn't ultimately like or feel they are
  important to the Pregis Team.  .

EXHIBIT 3

| | |
|---|---|
| **To:** | Manu Bettegowda |
| **Subject:** | RPP Super Bonus |
| **Date:** | Friday, January 19, 2018 2:15:51 PM |

Some of this is different than we discussed; I apologize and should have been more clear about that. I hear and understand your concerns. My effort with that email was to provide feedback/reaction from the team about the super bonus and other personnel issues related directly to them. Since receiving your email, I've talked with the executive team members and offer the following feedback.

1. Payment of the Super Bonus:
   a. Those of us who are equity owners get the money up front from the sale and felt that some part of the super bonus should also be paid up front to offset the lower price for the business. Rex has been adamant around getting $20 million for the business, but us equity owners have persuaded him to consider $18 and then we put a bit more pressure on him for the $17 with knowledge that there would be employment bonuses for those staying with the sale. Because of that there is a desire to get 50% of that money in the beginning and I assumed it would be a challenge, so suggested the split of 30/35/35 as a win/win option for all.
   b. Guaranteed pay on Termination is good. Lack of pay when one quits is understandable and acceptable.
   c. Super bonus is separated from the job compensation program on salary and bonus based upon achievement of business goals, and super bonus is guaranteed payable at the ends of the agree upon timelines.
2. Non-compete is important to all of us and I'm sure we can develop a "win/win" on this. Could you send your standard non-compete for our review?

**From:** Manu Bettegowda [mailto:MBettegowda@OlympusPartners.com]
**Sent:** Friday, January 19, 2018 9:48 AM
**To:** Don Tate <D.Tate@RexPerformance.com>
**Subject:** RE: RPP Super Bonus

Don,

Thanks for sending over and confirming receipt. There are some things in here that we should talk about as some of it is different from what we discussed. Let me know when you would like to discuss. We can do it in person on Monday or this afternoon.

I would prefer to keep it in the 50% in six months and 50% in 12 months but can talk about it. I am fine with paying it out even if we terminate someone but not if they resign. I agree it would not be tied to any business goals but just the passage of time and continued employment. We are buying this company and offering this money and the 17mln really for the team. If someone leaves of their own volition, I don't think we should have to pay them. I agree this is different from the regular

salary/bonus.

The non-compete is going to be important again as we are trying to do this acquisition for the people and the knowledge. We don't want to be in a position where we pay all this money and the team leaves and starts competing against us and thereby we are funding the new competitor. That I don't think makes sense. I think we can bifurcate the non-compete, where someone resigns its longer than if they are terminated. Please let me know when you would like to discuss.

Manu

Manu Bettegowda
Olympus Partners
(O) 203-353-5917

---

**From:** Don Tate [mailto:D.Tate@RexPerformance.com]
**Sent:** Friday, January 19, 2018 10:33 AM
**To:** Manu Bettegowda
**Subject:** RPP Super Bonus

Morning Manu.

Thanks for the phone conversation this morning. Below is the 2nd email that I sent last night; not sure what happened to it.
----------------------------------------------------
Hi Manu.

Sorry for the delay in getting these emails to you; struggling a little bit to keep up.    I look forward to the phone call tomorrow and our meeting on Monday to discuss some of the things below as well as many other things. We talked about keeping this super bonus very confidential and private from the deal itself, since it is a team incentive.

We discussed a compensatory plan payable to the RPP Team. The Purchase Price of $17million would be paid to Rex Ownership and a separate and additional bucket of $1.5 million would be set aside and payable as "super bonus" to the Team. The concerns/questions:

- The bucket of monies (super bonus) would be guaranteed and paid separately from any salary/bonus package for the jobs offered and paid accordingly:
  - 30% paid Day 1
  - 35% Paid at end of 6 months
  - 35% Paid at end of 12 months
  - All funds guaranteed paid in full immediately in the event of termination or resignation
  - Not tied or aligned to any business goals.
  - The jobs offered to each individual would carry a salary and bonus separate from the "super bonus", and the regular bonus would be payable based upon the company/business goals and achievements as determined by Pregis Leadership.
- In the purchase agreement last year the non-compete was quite lengthy. We propose no Non-Compete required during 1st 12 months. The group, including me, has some

100+ years of experience in the manufacture, product development, sales and marketing of packaging products/markets.  With that knowledge and experience we have a great deal to give and not as much to take.  The team is eager and excited to share and give and help in every way, but hesitant to be restricted from finding employment if the Pregis Team doesn't ultimately like or feel we are important to the Pregis Team.

I look forward to your feedback.

EXHIBIT 4

| | |
|---|---|
| **From:** | Michael Cuffia |
| **To:** | Don Tate |
| **Subject:** | Re: Revised: Take a look |
| **Date:** | Sunday, January 21, 2018 11:44:27 AM |

Yeah that's cool.  Although spreading some to next is not too bad from a tax standpoint...!!!

On Jan 21, 2018, at 12:54 PM, Don Tate <D.Tate@RexPerformance.com> wrote:

If they'll agree with 30% superbonus up front, it's a lil more than the difference between $17 and $18

On Jan 21, 2018, at 10:31 AM, Michael Cuffia <MikeC@RexPerformance.com> wrote:

Yep looks right!

# EXHIBIT 5

| | |
|---|---|
| **To:** | Manu Bettegowda |
| **Subject:** | Rex Performance Products - Meeting Agenda & Request List |
| **Date:** | Sunday, January 21, 2018 8:18:55 PM |
| **Attachments:** | Chicago Meeting D T Notes (1-22-18).docx |

Confidential...

Hi Manu.

Let's discuss tomorrow the schedule for LOI and APA and close date.  Once we've completed the LOI, the flow of information will be quick and complete.

Let's also discuss the issues that took us from the $24million purchase price in last year's LOI to the final numbers offered and rejected; the things that caused the deal to fall apart.  This way we can assure that we do not allow that to happen again this year.  Right now we understand your purchase offer to be for $17 million plus inventory and we assume you'll  pay prepaids (only one; prepaid rent on outside warehouse).  Any discounting from the purchase price of $17 million will most likely kill the deal.  Additionally, to incentivize the Executive and Local Team, a Super Bonus program has been offered and will be separate and independent of this purchase agreement and will remain totally confidential and separated from the LOI, APA and/or any of the other purchase sell documents.

I have responded with highlights to the Discussion Topics, as attached.


-----Original Message-----
From: Manu Bettegowda [mailto:MBettegowda@OlympusPartners.com]
Sent: Friday, January 19, 2018 5:06 PM
To: Don Tate <D.Tate@RexPerformance.com>
Subject: Fwd: Rex Performance Products - Meeting Agenda & Request List

Don,

Sorry I thought I sent this in the morning.

Manu

Begin forwarded message:

From: Chase Ormond <cormond@OlympusPartners.com<mailto:cormond@OlympusPartners.com>>
Date: January 19, 2018 at 7:52:11 AM EST
To: Manu Bettegowda <MBettegowda@OlympusPartners.com<mailto:MBettegowda@OlympusPartners.com>>
Cc: David Haddad <dhaddad@OlympusPartners.com<mailto:dhaddad@OlympusPartners.com>>, Sam Greenberg
<SGreenberg@OlympusPartners.com<mailto:SGreenberg@OlympusPartners.com>>
Subject: Rex Performance Products - Meeting Agenda & Request List

I received sign off from everyone last night. Feel free to forward the note below and attached unless you have any comments. I will be in the office around 10:30 today


Begin forwarded message:

From: Chase Ormond <cormond@OlympusPartners.com<mailto:cormond@OlympusPartners.com>>
Date: January 18, 2018 at 5:45:33 PM EST
To: Chase Ormond <cormond@OlympusPartners.com<mailto:cormond@OlympusPartners.com>>
Subject: Rex Performance Products - Meeting Agenda & Request List

Please see attached agenda for Monday's meeting in Chicago.  In addition, I have attached a request list in Excel (note, we would like to receive the high priority items before the meeting, to the extent available)

---

Chase Ormond
Olympus Partners
Metro Center | One Station Place
Stamford, CT 06902
T: (203) 353 - 5921
F: (203) 353 - 5910
cormond@olympuspartners.com<mailto:cormond@olympuspartners.com>

Exhibit 6

| | |
|---|---|
| **From:** | Don Tate |
| **To:** | Michael Cuffia |
| **Subject:** | FW: Retention Bonus |
| **Date:** | Tuesday, January 23, 2018 3:33:00 PM |

-----Original Message-----
From: Manu Bettegowda [mailto:MBettegowda@OlympusPartners.com]
Sent: Tuesday, January 23, 2018 5:14 PM
To: Don Tate <D.Tate@RexPerformance.com>
Subject: Re: Retention Bonus

Don,

Thanks for sending. The meeting yesterday I thought went very well. I think it is easiest to pay the other employees by yourselves so that we don't make them parties to any agreements. The Loi should be to you shortly. Sorry for the delay but I was on a plane most of the day and just landed in California.

Manu

On Jan 23, 2018, at 6:08 AM, Don Tate <D.Tate@RexPerformance.com<mailto:D.Tate@RexPerformance.com>> wrote:

Here is a summary of the ownership payout and my thinking around the retention bonus payments. If paying these individuals beyond me, Michael and Jeff is problematic for the company, then no worry, we will pay them individually from our proceeds so that the company is not liable for it.

<Ownership Payout.xlsx>

EXHIBIT 7

|  | Hire Date | old % | new % | adj % for team | $ 1,500,000 | | 33% |
|---|---|---|---|---|---|---|---|
| James Tate | 1/1/2012 | 21.33% | 59.44% | 50.9995% | $ 764,992.80 | $ | 254,995.05 |
| Michael Cuffia | 2/17/2013 | 9.55% | 26.62% | 22.8400% | $ 342,599.40 | $ | 114,198.66 |
| Jeff Smith | 6/1/2015 | 5.00% | 13.94% | 11.9605% | $ 179,407.80 | $ | 59,802.00 |
|  |  |  |  |  | $ 1,287,000.00 | $ | 428,995.71 |
|  |  | 35.88% | 100.00% |  | 85.8% |  |  |
|  |  | x2.787 | x2.3913 |  |  |  |  |
|  |  |  |  |  |  |  |  |
| Nilesh A | 3/1/2012 |  |  | 6.333% | $ 95,000 | $ | 31,666.35 |
| Ryan B | 5/14/2012 |  |  | 1.467% | $ 22,000 | $ | 7,333.26 |
| Corey | 6/22/2015 |  |  | 1.467% | $ 22,000 | $ | 7,333.26 |
| Lisa | 4/18/2012 |  |  | 1.467% | $ 22,000 | $ | 7,333.26 |
| Dave H. | 9/6/2011 |  |  | 0.867% | $ 13,000 | $ | 4,333.29 |
| Matt R. | 7/8/2015 |  |  | 0.867% | $ 13,000 | $ | 4,333.29 |
| Colin | 10/12/2015 |  |  | 0.867% | $ 13,000 | $ | 4,333.29 |
| Chip | 4/2/2014 |  |  | 0.867% | $ 13,000 | $ | 4,333.29 |
|  |  |  |  | Total | $ 213,000 | 14.2% |  |

EXHIBIT 8

CAUSE NO. _____

| | | |
|---|---|---|
| **REX PERFORMANCE PRODUCTS, LLC,** | § | **IN THE DISTRICT COURT** |
|     *Plaintiff,* | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | **_____ JUDICIAL DISTRICT** |
| **JAMES DONALD TATE, MANU** | § | |
| **BETTEGOWDA, PREGIS** | § | |
| **PERFORMANCE PRODUCTS, LLC,** | § | |
| **and OLYMPUS PARTNERS, L.P.** | § | |
|     *Defendants* | § | **TARRANT COUNTY, TEXAS** |

## <u>AFFIDAVIT OF REX HANSEN</u>

BEFORE ME, the undersigned authority, personally appeared, REX HANSEN who, being duly sworn, deposed as follows:

1.    "My name is REX HANSEN. I am a principal shareholder of Willamette Holdings, LLC, the majority Member of Plaintiff REX PERFORMANCE PRODUCTS, LLC (hereinafter 'RPP') and an authorized representative of Plaintiff. I am over the age of 21, am of sound mind, have never been convicted of a felony, and am capable of making this affidavit. I have reviewed Plaintiff's Original Petition, Application for Temporary Restraining Order and for Injunctive Relief and have personal knowledge of the facts stated therein and in this affidavit which are all true and correct.

2.    "Attached to Plaintiff's Original Petition, Application for Temporary Restraining Order and For Injunctive Relief (hereinafter 'Plaintiff's Original Petition') are eleven (11) pages of records from RPP, Plaintiff. I am an agent for RPP and I have, or a person under my supervision, has had care, custody, and control of all records concerning JAMES DONALD TATE (hereinafter 'Tate'), MANU BETTEGOWDA (hereinafter 'Bettegowda'), PREGIS PERFORMANCE PRODUCTS, LLC (hereinafter 'Pregis') and OLYMPUS

PARTNERS, L.P. (hereinafter 'Olympus') (collectively referred to as 'Defendants'). The said eleven (11) pages of records are kept by RPP in the regular course of business of RPP, and it was in the regular course of business of RPP for an employee of RPP, with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the record or to transmit information thereof to be included in such a record; and the record was made at or near the time or reasonably soon thereafter. The records attached to Plaintiff's Original Petition are the originals or exact duplicates of the originals.

3.   "**REX PERFORMANCE PRODUCTS, LLC (Plaintiff)** is a premier manufacturer of polyethylene foam that employs industry professionals supported by top-notch customer service representatives. RPP is in the business of creating lasting partnerships, producing quality foam, and is dedicated to understanding the individual business requirements of our customers to deliver value-added solutions. RPP is an organization built upon quality, competitive pricing, and quick-to-market concepts. RPP is an industry leader in the production of Polyethylene Foam. Polyethylene Foam is the primary material used to protect goods during shipping. With the explosion of the online marketplace, producers of Polyethylene Foam face tremendous potential for massive growth. RPP was formed as a Michigan Limited Liability Company in 2011. At the time that RPP was organized, the sole member was Willamette Holdings, LLC.

4.   "**WILLAMETTE HOLDINGS, LLC** is a Michigan Limited Liability Company, formerly known as Big Deal, LLC, which now owns 63% of the membership interest in RPP. Willamette Holdings, LLC is itself owned equally by three members, Rex Hansen, John Ballinger, and Rob Story. Any and all predecessor entities not specifically listed

herein that at one time owned a membership interest in RPP are now wholly owned by Willamette Holdings, LLC.

5.   "**EMERALD PEAK GROUP, LLC** is a Michigan Limited Liability Company which now owns 1% of the membership interest in RPP. EMERALD PEAK GROUP, LLC is itself owned equally by myself and Heidi Hansen.

6.   "**JAMES DONALD TATE** is the President and CEO of RPP. Defendant Tate was hired to be President and Chief Executive Officer of RPP in January, 2011. On or about June 5, 2012, the owners of RPP executed the Donald Tate Equity Award Agreement, which granted to Tate a 10% equity position in the profits of RPP, retroactive to June 1, 2012. Tate received an additional 5% equity position in RPP each year from December 31, 2012 through December 31, 2014.  Through all incentives that have accumulated over the years, Tate now holds a 22% membership interest in RPP. Tate is well known in the small Polyethylene Foam production industry due to his nearly 30 years working for the industry leader, Sealed Air Corporation. Mr. Tate lives in Keller, Texas.

7.   "**MICHAEL CUFFIA** is the Director Operations of RPP. Cuffia was hired to be Director of Operations of RPP in 2014. On or about June 1, 2015, the owners of RPP executed the Michael Cuffia Equity Award Agreement, which granted to Cuffia a 7% equity position in the profits of RPP, retroactive to May 1, 2015.  Cuffia received an additional 1% equity position in RPP each year from December 31, 2015 through December 31, 2017. To date, Cuffia holds approximately a 10% membership interest in RPP.

8.   "**JEFF SMITH** is the Director of Engineering of RPP. Smith was hired to that position with RPP in 2015. On or about June 1, 2015, the owners of RPP executed the Jeff Smith

Equity Award Agreement, which granted to Jeff Smith a 2% equity position in the profits of RPP on June 1, 2016.  Smith received (and is scheduled to receive) an additional 1% equity position in RPP each year from December 31, 2016 through December 31, 2018.

9.     "**PREGIS PERFORMANCE PRODUCTS, LLC** purchased all the assets of RPP through an asset purchase agreement executed on February 23, 2018.  Pregis is a leading provider of innovative protective packaging materials and systems headquartered in Chicago that operates multiple North American manufacturing and warehousing facilities devoted to protective packaging solutions. Pregis works not only in Polyethylene Foam, but with other materials as well. Pregis' desire to purchase RPP was twofold: (1) by purchasing the assets of RPP Pregis eliminates a competitor in the marketplace; and (2) the purchase of RPP's assets resulted in the acquisition of superior technology utilized by RPP in producing Polyethylene Foam as opposed to the processes currently utilized by Pregis. Pregis has been attempting to purchase RPP since November, 2016.

10.    "**OLYMPUS PARTNERS, L.P.** owns Pregis. Olympus is a private equity firm that provides equity capital for middle market management buyouts and for companies needing capital for expansion. Olympus is an active, long-term investor across a broad range of industries, including restaurants, consumer products, healthcare services, financial services and business services. Olympus acquired Pregis in May, 2014.

11.    "**MANU BETTEGOWDA** is a Partner at Olympus and Pregis is in his portfolio of businesses. According to the Olympus website, Bettegowda has worked with Olympus since 1998 and became a partner in 2005. During all relevant periods in this matter, Defendant Bettegowda acted as Partner for Olympus and agent for Pregis, Olympus' wholly owned subsidiary.  Bettegowda conspired with Tate to drive down the purchase

price of RPP and agreed to pay Tate, Cuffia, and Smith a secret 'Super Bonus' in exchange for reducing the sales price of RPP.

12.    "In November 2016, Bettegowda, as agent for Pregis approached RPP regarding the possibility of purchasing all of the assets of RPP. Formal discussions ensued and all parties began conducting due diligence into the transaction. However, in February 2017, the parties terminated discussions and walked away from the potential transaction. As of February, 2017, the price to purchase all of the assets of RPP under discussion was $24 million.

13.    "Then, in December, 2017, Pregis returned to reopen negotiations with RPP regarding the asset purchase. However, this time, instead of approaching RPP as a whole, Pregis approached Donald Tate, RPP's President and Chief Executive Officer, directly. Tate then relayed Pregis's renewed interest to the other members of RPP. After consultation among the members, Tate was entrusted with the responsibility of negotiating the sale and was authorized to approach Pregis with an offer to sell all the assets of RPP to Pregis for a purchase price of $20 million.

14.    "Presumably, Defendant Tate then relayed the $20 million offer to Pregis. On January 15, 2018, Tate flew to Chicago, the home office of Pregis, to meet with Pregis personnel to discuss the asset purchase. When he returned, he advised the other Members of RPP that Pregis would offer no more than $18 million for the assets of RPP. However, for reasons unknown, Tate quickly reduced that offer to $17 million on January 18, 2018. At the time, Tate was adamant that $17 million dollars was the best price RPP was going to receive and strongly encouraged the other Members to accept the offer.

15.     "Throughout the entire process, all of the negotiations with Pregis went through Tate. He, as President and CEO, had sole control over negotiations and communications.  The only communications that I or any other member of RPP had regarding the asset purchase were de minimis communications with Olympus regarding due diligence. Tate had total control over negotiation of the asset purchase of RPP.

16.     "After consultation, the members of RPP, including Tate, agreed to accept the purchase price of $17 million based on Tate's recommendation and a letter of intent was signed on or about January 21, 2018.

17.     "The sale was effectuated and Pregis purchased the assets of RPP with contracts executed on February 23, 2018 and closing taking place that same day.

18.     "Without any disclosure to me and the other members of RPP, Tate negotiated a side-deal with Pregis, Olympus, and Bettegowda in secret for himself, Michael Cuffia, and Jeff Smith.  It is possible that other parties are also beneficiaries of this secret side deal.

19.     "In the process of reviewing items for due diligence and matters related to the closing of the business, numerous emails were discovered on Tate's work email address whereby he, an officer and member of RPP, negotiated a secret deal with Pregis, through Manu Bettegowda of Olympus, whereby Tate and others would receive a 'Super Bonus' to the tune of $1.5 million as compensation separate and apart from job-related compensation in exchange for driving the sales' price of RPP down from $20 million to $17 million.

20.     "Tate himself explains that his motivations for stealing from his own company are that he was dissatisfied with the compensation he would receive as an equity owner in RPP. He thought he should receive more money than others with a greater percentage of membership interest simply because he felt he worked harder. On January 15, 2018, the

same date Tate travelled to Chicago to discuss the sale with Pregis, Tate emailed me to say:

> I look at [the deal] and say, hmmm are the ownership percentages [in RPP] representative of the time, effort, sacrifices and commitment put forth by such individuals [including myself]. Easy for me to rank accordingly, but I'd rank #1 D Tate #1A R Hansen #3 M Cuffia #4 Jeff Smith #5 J Ballinger #6 Rob. . .
>
> ***
>
> I'm very dissatisfied with less than $2 million [for myself]

A true and correct copy of the full email correspondence between Tate and myself is attached to Plaintiff's Original Petition as Exhibit 1 and incorporated herein by reference. In short, Tate wanted more money than three individuals that collectively owned 63% of the membership interest in RPP. Those individuals (1) personally guaranteed all debts of RPP (Tate personally guaranteed nothing) and (2) myself, John Ballinger, and Rob Story personally guaranteed or funded over $16 million in financing to RPP. Moreover, Tate received executive compensation in the form of salary of approximately $200,000.00 per year plus bonuses for his role as President and Chief Executive Officer of RPP and no other member of RPP received any salary for their efforts beyond Cuffia and Smith, who were also employees.. The next day, Tate forwarded the email exchange attached as Exhibit 1 to his personal email account abtate31@yahoo.com. Then, if not sooner, Tate began a plan to steal from his own company that was further set in motion at the Chicago meeting with Bettegowda on January 15, 2018.

21. "On January 18, 2018, Tate began corresponding with Michael Cuffia, another executive who was complicit in breaching his fiduciary duties regarding the negotiation of the 'Super Bonus' whereby Tate clearly states the 'Super Bonus' would be 'guaranteed and

paid separately from any salary/bonus package for the jobs offered and paid' within one year. A true and correct copy of the full email from Tate to Michael Cuffia is attached to Plaintiff's Original Petition as Exhibit 2 and incorporated herein by reference.

22.     "The negotiation of a 'Super Bonus' was a secret that was never disclosed by Tate, Cuffia, or Smith to any of the other members of RPP.  Instead, Tate, Cuffia, and Smith instead chose to accept their share of the 'Super Bonus' for their own personal gain.

23.     "At least as early as January 19, 2018, and likely earlier, it is clear that Bettegowda (a partner of Olympus), Olympus and Pregis encouraged and participated in this scheme. The fact that the 'Super Bonus' was meant to be concealed from myself and the other members of RPP is made clear when Tate, in a series of emails to Bettegowda, unequivocally reaffirmed the need to conceal the existence of the 'Super Bonus' and further tied the "Super Bonus" to the reduced sales price of RPP:

> The Purchase Price of $17 million would be paid to [RPP] and a separate and additional bucket of $1.5 million would be set aside and payable as "super bonus" to [those staying on with the sale].
>
> ***
>
> We talked about keeping this super bonus very confidential and private from the deal itself, since it is a[n] … incentive [for those staying on with the sale].
>
> ***
>
> Rex [Hansen] has been adamant around getting $20 million for the business, but us equity owners have persuaded him to consider $18 and then we put a bit more pressure on him for the $17 with [our] knowledge that there would be [super] bonuses for those staying with the sale.

A true and correct copy of the email exchanges between Tate and Bettegowda is attached to Plaintiff's Original Petition as Exhibit 3 and incorporated herein by reference.  Stated

simply, Tate negotiated a side deal for him and his "team" to receive a $1.5 million "super bonus," after Tate successfully "persuaded" RPP to accept $17 million instead of "$20 million for the business" because he was unhappy with the amount of money he would realize from the sale as an equity owner.

24.    "Moreover, Tate and Cuffia, executives and equity owners of RPP, clearly tied their intentional efforts to drive down the sales price of RPP together with their secret 'Super Bonus' compensation. In fact, they even took the time to exchange emails in an attempt determine which way they would get the most 'up front' money:

**Tate:**      If [Pregis will] agree with 30% super bonus up front, it's a lil more than the difference between $17 and $18.

**Cuffia:**   Yeah that's cool.  Although spreading some to next [year] is not too bad from a tax standpoint…!!!

A true and correct copy of the January 21, 2018 email exchange between Tate and Cuffia are attached to Plaintiff's Original Petition as Exhibit 4. Tate's designs become even more apparent when a spreadsheet was discovered in Tate's emails where he calculates exactly what his equity compensation would be if his 'membership shares' were increased to 59.44%. A true and correct copy of that spreadsheet is attached to Plaintiff's Original Petition as Exhibit 7 and incorporated herein by reference. In short, it appears that Tate was calculating what exact compensation he would accept in the 'Super Bonus' in exchange for driving the sales price of RPP down.

25.    "Further, it was discovered that on January 21, 2018, Tate sent an email to Bettegowda where the first word is "confidential" again reiterating how important it was that the "Super Bonus" remain secret and further outlining the agreement between himself,

Pregis, Olympus, and Bettegowda regarding their plan to to reduce the sales price of RPP in exchange for $1.5 million:

> Any [further] discounting from the purchase price of $17 million will most likely kill the deal. Additionally, … a Super Bonus program has been offered and will be separate and independent of this purchase agreement and will remain totally confidential and separated from the … purchase sell documents.

A true and correct copy of the email exchange between Tate and Bettegowda is attached to Plaintiff's Original Petition as Exhibit 5 and incorporated herein by reference. Clearly Bettegowda, Olympus, and Pregis understood and were complicit in this deception.

26.   "Finally, on January 23, 2018, correspondence between Tate and Bettegowda reveals the deceit on the part of all parties where Tate, while attempting to negotiate additional 'Super Bonuses' agrees '[i]f paying these individuals, beyond me, Michael [Cuffia], and Jeff [Smith] is problematic for the company, then no worry, we will pay them individually from our proceeds so that [Defendant Pregis] is not liable for it.' A true and correct copy of the email correspondence discovery in Tate's work email is attached hereto as Exhibit 6 and incorporated herein by reference.

27.   "Tate was placed in a position of trust and authority within RPP and tasked with negotiating the best possible deal for the purchase of the assets of RPP by Pregis. Tate was the President, Chief Executive Officer, and holds a 22% membership interest in RPP. Defendant Tate was supposed to put the interest of his employer above his own interest. Instead, he did quite the opposite.

28.   "Defendant Tate concealed from or failed to disclose certain facts to Plaintiff RPP. Defendant Tate knew the Plaintiff was ignorant of the facts and did not have an equal opportunity to discover the facts. Defendant Tate was deliberately silent when it had a

duty to speak.   Defendant is currently working on behalf of a competing company without disclosure or approval and used his position and deception to give a competitor an advantage.

29.    "Defendant Tate further engaged in acts of self-dealing through negotiating a side-deal for himself to the detriment of RPP.  Defendant Tate failed to use uncorrupted business judgment to act in the best interest of RPP.

30.    "The current state of the evidence exhibits that Defendant Tate and Defendants Olympus, Pregis, and Bettegowda engaged in a conspiracy to use Tate's position as President, CEO, and shareholder in RPP to drive down the purchase price for the assets of RPP in exchange for additional secret compensation to Tate, Cuffia, and Smith.

31.    "Defendants Olympus, Pregis, and Bettegowda have no motive not to harm Plaintiff RPP. Defendants Olympus, Pregis, and Bettegowda have clearly intentionally conspired with Defendant Tate and their illegal acts, deception, and theft have given them and unfair advantage over Plaintiff RPP, and they have profited from Tate's nefarious actions by saving money on the purchase that they were able to use to further entice Tate, Cuffia, and Smith to stay after the purchase.

32.    "Plaintiff RPP's injury is irreparable because it **will be unable to be adequately compensated in damages**. Plaintiff believes that Pregis, Olympus, and Bettergowda intend to pay at least 30% of the 'Super Bonus' to Tate imminently. Based on Plaintiff RPP's dealings in the past, Defendant Tate cannot respond in damages. Defendant Tate has been an employee of RPP for seven years and I am familiar with his salary over that time period. At no time has Tate earned more than approximately $200,000 in salary per year as an employee of RPP. Moreover, Tate is 67 years old and unlikely to continue

working. In short, Tate does not have to funds to compensate RPP in damages if he is permitted to dissipate the 'Super Bonus.' I am likewise familiar with the salaries of Cuffia and Smith, which are both lower than Tate's salary. While younger, neither Cuffia nor Smith could respond in damages if they are permitted to dissipate the 'Super Bonus.' If Tate is permitted to disperse any 'Super Bonus' he receives, the funds to compensate RPP for Tate's breach of fiduciary duty will be gone forever.

33.    "As part of his employment with RPP, Defendant Tate utilizes a laptop computer for which he was reimbursed by RPP. That laptop computer will soon be in the care, custody, and control of the Defendants, if it is not already. After learning of Tate's deceit and discovering the emails attached to Plaintiff's Original Petition, Plaintiff briefly obtained Tate's laptop in order to image the laptop both (1) to preserve evidence and (2) as part of its due diligence in effectuating the sale of RPP's assets. Through this process, Plaintiff discovered that Defendant Tate has already attempted to destroy evidence of his wrongdoing by intentionally downloading "Ransomware" malware to destroy his email and files on his laptop. It is believed that Tate's downloading of the "Ransomware" virus on his computer was intentional. While Plaintiff believes that Tate's attempt was unsuccessful, and the data can be recovered, it is clear that Tate is willing and able to destroy evidence and thereby conceal his culpability. Moreover, as the asset purchase of RPP is fully realized, most of the evidence of the Defendants' tortious conduct will be solely in the possession of the Defendants. Accordingly, Plaintiff will suffer irreparable harm if Defendants are not prevented from any further attempts to destroy the evidence of their misdeeds."

[The remainder of this page was left blank intentionally.]

Further Affiant Sayeth Naught.

**REX HANSEN,** *Authorized Representative:*
**REX PERFORMANCE PRODUCTS, LLC**
**Plaintiff**

SUBSCRIBED AND SWORN TO before me by the said REX HANSEN on the

25 day of February, 2018 to certify which witness my hand and seal of office.

OFFICIAL STAMP
JUDIETH L HENRY
NOTARY PUBLIC - OREGON
COMMISSION NO. 948084
MY COMMISSION EXPIRES MARCH 01, 2020

NOTARY PUBLIC IN AND FOR THE
STATE OF ~~MICHIGAN~~
Oregon

EXHIBIT 9

CAUSE NO. _____

| | | |
|---|---|---|
| **REX PERFORMANCE PRODUCTS, LLC,** | § | **IN THE DISTRICT COURT** |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **JAMES DONALD TATE, MICHAEL** | § | **_____ JUDICIAL DISTRICT** |
| **CUFFIA, PREGIS PERFORMANCE** | § | |
| **PRODUCTS, LLC, and MANU** | § | |
| **BETTEGOWDA** | § | |
| *Defendants* | § | |
| | § | **TARRANT COUNTY, TEXAS** |

## AFFIDAVIT OF STEPHEN P. BISHOP IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

BEFORE ME, the undersigned authority, personally appeared STEPHEN P. BISHOP, who, being duly sworn, deposed as follows:

1. "My name is STEPHEN P. BISHOP. I am of sound mind, capable of making this affidavit, and have personal knowledge of the facts stated herein and all statements contained herein are true and correct.

2. "I have been an advisor on strategic acquisitions, mergers and divestitures for over 20 years. My experience includes identifying acquisition opportunities, performing due diligence of acquisition targets, negotiating with acquisition targets and managing the legal and accounting teams to structure successful acquisitions and divestitures. In my work history I have worked for Barrier Advisors (an affiliate of Highland Capital Management), Southwest Securities, Inc., GEM Advisors Dallas, LLC and Amerimark Capital Corporation/The Capsource Fund, among many others.

3. "As a result of my work experience I am familiar with the duties and obligations owed by executives and officers to their employers. Further, I am familiar with industry-standard

negotiations in retaining executive teams whenever a merger/acquisition takes place. I am also familiar with asset acquisitions and retaining executive teams as a result of such acquisitions.

4. "I have reviewed a number of documents related to the acquisition of Rex Performance Products, LLC by Defendant Pregis Performance Products, LLC. Included in the documents I have reviewed are the executed Asset Purchase Agreement (with attached exhibits) and the following Exhibits attached to the Application for Temporary Restraining Order and for Injunctive Relief filed herein:

Exhibit 1:    Email exchange between Defendant Donald Tate and Rex Hansen beginning January 15, 2018;

Exhibit 2:    Email exchange between Defendant Donald Tate and Michael Cuffia beginning January 18, 2018;

Exhibit 3:    Email exchange between Defendants Donald Tate and Manu Bettegowda beginning January 19, 2018;

Exhibit 4:    Email exchange between Defendant Donald Tate and Michael Cuffia on January 21, 2018;

Exhibit 5:    Email exchange between Defendants Donald Tate and Manu Bettegowda on January 21, 2018;

Exhibit 6:    Email exchange between Defendants Donald Tate, Manu Bettegowda and Michael Cuffia beginning January 23, 2018;

Exhibit 7:    Spreadsheet created by Defendant Tate regarding potential calculations of equity payments under different sales prices of RPP and different ownership percentages; and

Exhibit 8:     Affidavit of Rex Hansen.

5. "It is clear from reviewing these documents that Defendant Tate engaged in secret negotiations regarding a side deal with the acquiring entities, and specifically with Defendant Manu Bettegowda.

6. It is obvious this side deal with Defendant Bettegowda and the acquiring entities was not to be disclosed to Defendant Tate's employer in a number of respects. One of the most obvious indicators that such communication and the side deal itself were to remain a secret can be found in Exhibit 5 where Defendant Tate states in an email to Defendant Bettegowda on January 21, 2018 that 'a Super Bonus program has been offered and will be separate and independent of this purchase agreement and will remain totally confidential and separated from the LOI, APA and/or any of the other purchase sell [sic] documents.'

7. "Although negotiations between an acquiring entity and its target's executive team are common, these negotiations are always conducted in the open where they can be examined by the seller. In this way the target's executive team discharge their obligations to their employer, the seller, to wit: the duties of loyalty and utmost good faith, candor, fair and honest dealing, of full disclosure, etc.

8. "I have observed executives engage in behavior like that of Defendant Tate as seen in this case. In those instances the executive's employment was terminated for cause upon discovery of these nefarious acts.

9. "Additionally, in reviewing the affidavit of Rex Hansen it is clear that pressure was applied by Defendant Tate to the owners of Rex Performance Products to lower the sales

price of the assets being sold. This lowered price then translated into a secret 'Super Bonus' that is apparently to be paid to Defendant Tate and Michael Cuffia.

10. "A retention bonus of $1.5 million is grossly disproportional to the sums normally paid to retain an executive team in these circumstances. In particular, it appears grossly disproportional when considering the sums paid to the primary executive at Rex Performance Products with a salary of about $200,000 per annum.

11. "Based on the documents I have reviewed and the totality of the circumstances, it is my opinion as a merger and acquisition specialist that the Super Bonus to be paid to Defendant Tate is not a payment to retain executives, but is more akin to a payment for brokering a transaction. This is true for a number of reasons:

    a.   The secrecy in which the payment was negotiated;

    b.   The fact that there are no actual agreements between the parties

    c.   The animosity I observed in the email exchanges in Exhibit 1 between Rex Hansen and Defendant Tate where they were discussing the anticipated equity distribution. It is clear that Defendant Tate felt undercompensated at that time; and

    d.   The extreme disproportionality between the Super Bonus paid of $1.5 million and the annual salary paid to the executive team. This is particularly true considering the annual salaries of the executive team.

Further Affiant Sayeth Naught:

BY: _____

STEPHEN P. BISHOP

SIGNED AND SWORN to before me on February 26, 2018.

JASON HORNBERGER
Notary Public, State of Texas
Comm. Expires 07-27-2021
Notary ID 131225146

_____

Notary Public, State of Texas

**EXHIBIT "A-2"**

**Emergency Motion for Expedited Discovery**

141-298129-18

FILED
TARRANT COUNTY
2/26/2018 11:15 AM
THOMAS A. WILDER
DISTRICT CLERK

## CAUSE NO. 141-298129-18

| | | |
|---|---|---|
| REX PERFORMANCE PRODUCTS, LLC, | § | IN THE DISTRICT COURT |
|    *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | |
| | § | 141st JUDICIAL DISTRICT |
| JAMES DONALD TATE, MANU | § | |
| BETTEGOWDA, PREGIS | § | |
| PERFORMANCE PRODUCTS, LLC, | § | |
| and OLYMPUS PARTNERS, L.P., | § | |
|    *Defendants.* | § | TARRANT COUNTY, TEXAS |

### PLAINTIFF'S EMERGENCY MOTION FOR EXPEDITED DISCOVERY

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff and Applicant REX PERFORMANCE PRODUCTS, LLC (hereinafter "RPP") and files this its Emergency Motion for Expedited Discovery pursuant to Rule 191.1 of the Texas Rules of Civil Procedure and in support of same would respectfully show the Court as follows:

### I.

### GROUNDS FOR RELIEF

1. On February 26, 2018, Plaintiff RPP filed its Original Verified Petition and Application for Temporary Restraining Order, Temporary Injunction and Permanent Injunction, wherein Plaintiff seeks injunctive relief and damages against Defendants JAMES DONALD TATE (hereinafter "Tate"), MANU BETTEGOWDA (hereinafter "Bettegowda"), PREGIS PERFORMANCE PRODUCTS, LLC (hereinafter "Pregis") and OLYMPUS PARTNERS, L.P. (hereinafter "Olympus") (hereinafter collectively referred to as "Defendants") for breach of fiduciary duty for self-dealing and other related causes of action.

2.      Defendant Tate, the President and Chief Executive Officer of Plaintiff RPP, who is also a minority owner, negotiated the sale of Plaintiff's assets to Defendant Pregis. However, in that process Defendant Tate secretly negotiated a side deal for himself in the amount of $1.5 million in exchange for driving the price of the sale down for Pregis. This side deal was not disclosed to the board of Plaintiff and was only discovered by Plaintiff in reviewing Tate's emails as part of its due diligence to close the sale.

3.      This side deal, termed a "Super Bonus" by Tate and his joint tortfeasors Pregis, Olympus, and Bettegowda (Partner of Olympus and agent of Pregis), was compensation for Tate's double-dealing in convincing the owners of Plaintiff to reduce the sales price.[1]

4.      As part of Defendant Tate's employment with RPP as President and Chief Executive Officer, Defendant Tate utilizes a laptop computer for which he was reimbursed by RPP. That laptop computer will soon be in the care, custody, and control of the Defendants, if it is not already. After learning of Tate's deceit and discovering the emails attached to Plaintiff's Original Petition, Plaintiff briefly obtained Tate's laptop in order to image the laptop both (1) to preserve evidence and (2) as part of its due diligence in effectuating the sale of RPP's assets. Plaintiff has learned that Defendant Tate kept a copy of personal email (abtate31@yahoo.com) hosted/stored on his laptop, which Plaintiff now possesses from its image of the laptop. Plaintiff has quarantined Tate's personal email and has not accessed it to date. However, given that fact that it appears that Defendant Tate utilized his personal email as part of the commission of his tortious acts, Plaintiff would request

---

[1] Plaintiff asks the Court to take Judicial Notice of the pleadings and filing in this case. Specifically, the affidavits and evidence attached to *Plaintiff's Original Petition, Application for Temporary Restraining Order and for Injunctive Relief* (hereinafter "Plaintiff's Original Petition) filed contemporaneously with this Motion which are expressly relief upon, adopted by, and incorporated herein for all purposes.

an order of the Court granting Plaintiff permission to access and assess Defendant's personal emails currently in Plaintiff's possession.

5.      Additionally, through the process of imaging Defendant Tate's laptop, Plaintiff discovered that Defendant Tate has already attempted to destroy evidence of his wrongdoing by intentionally downloading "Ransomware" malware to destroy his email and files on his laptop. It is believed that Tate's downloading of the "Ransomware" virus on his computer was intentional. While Plaintiff believes that Tate's attempt was unsuccessful, and the data can be recovered, it is clear that Tate is willing and able to destroy evidence and thereby conceal his culpability. It is clear from some of the evidence obtained that Tate utilized a personal email address served by yahoo.com: abtate31@yahoo.com in furtherance of his tortious acts.[2] Accordingly, Plaintiff seeks expedited and unfettered access to Defendant's yahoo.com email accounts in order to obtain discoverable and admissible evidence. Moreover, as the asset purchase of RPP is fully realized, most of the evidence of the Defendants' tortious conduct is soon to be solely in the possession of the Defendants, if not already.

6.      In short, through mere chance, Plaintiff discovered Defendants' scheme and was able to locate some, but not all the evidence of Defendants' nefarious acts. Plaintiff will suffer irreparable harm if Defendants are permitted to pursue further attempts to destroy the evidence of their misdeeds. Accordingly, in the face of (1) Defendants who are willing to take extreme measures to conceal evidence, and (2) a looming temporary injunction hearing in which Plaintiff has the burden of proof and Defendants have all the evidence, expedited discovery is both appropriate and absolutely necessary.

---

[2] See Exhibit 1 attached to *Plaintiff's Original Petition, Application for Temporary Restraining Order and for Injunctive Relief.*

7.    In light of Defendants' continuing conduct at issue in this case and the ongoing harm suffered by Plaintiff, time is of the essence. Plaintiff, therefore, moves for entry of an order granting it expedited discovery to prepare for a hearing on its application for injunctive relief.

8.    Under Texas Rule of Civil Procedure 191.1, procedures and limitations set forth in the rules pertaining to discovery may be modified in any suit by the agreement of the parties or by court order for good cause. TEX. R. CIV. P. 191.1. Good cause exists in this case because a hearing on temporary injunctive relief will be held in no more than fourteen (14) calendar days. To fully prepare for the evidentiary burden that Plaintiff must meet at this hearing, and considering that the Defendants' reprehensible conduct has, for the most part, been conducted in secret, Plaintiff must engage in expedited discovery. Accordingly, good cause exists for the granting of this motion.

9.    Plaintiff wishes to serve a notice of deposition to obtain testimony from Defendants Tate, Bettegowda, non-party Michael Cuffia, and corporate representatives of Pregis and Olympus prior to the temporary injunction hearing. These depositions are necessary to prepare for the hearing on Plaintiff's application for injunctive relief. If Plaintiff is not allowed to take these depositions before the hearing date, it will be severely prejudiced in its ability to demonstrate the necessity for the issuance of Temporary injunctive relief.

10.    Plaintiff also seeks an order: (1) requiring Defendants to respond to Plaintiff's Requests for Disclosure and First Requests for Production; and (2) shortening the time by which Defendants must respond thereto. This order is requested so that Plaintiff may use this discovery to prepare for depositions and for the hearing on Plaintiff's Application for Temporary Injunction. Rules 194.3 and 196.2(a) provide that the responding party must

serve a written response on the requesting party within fifty (50) or thirty (30) days, depending on when the discovery requests are served. In this case, however, the end of even a 30-day response period will be after the expiration of any temporary relief the Court may grant and will be after any hearing on Plaintiff's Application for a Temporary Injunction. Therefore, an order expediting discovery is necessary in the present case.

11.   Plaintiff has satisfied its burden under Texas Rule of Civil Procedure 191.1 by showing good cause exists for expedited discovery. Plaintiff needs the requested responses to the discovery requests to adequately prepare for the depositions, which are also necessary to adequately prepare for the hearing on its Application for Temporary Injunctive Relief.

12.   Accordingly, Plaintiff requests that the Court order Defendants to respond to the discovery requests, attached hereto as Exhibit A, by 5:00 p.m., the 5th day of March, 2018, and order that Defendants actually produce responsive documents by the same time and date at the law offices of Darrell W. Cook & Associates,  A Professional Corporation, located at 6688 North Central Expressway, Suite 1000, Dallas, Texas 75206, as opposed to a mere promise to make the documents available at some point in the future. Plaintiff further requests that the Court require that Defendants be available for deposition at a date agreed upon by the parties, or, in the event no agreement can be reached, as noticed by Plaintiff in the deposition notice attached hereto as Exhibit B.

13.   For discovery not specifically addressed above, Plaintiff requests this Court order that all discovery requests be answered in three (3) days of service of any kind, and order the depositions referenced above to be taken with two (2) days' notice to the opposing party.

II.

PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff REX PERFORMANCE PRODUCTS, LLC respectfully prays that this motion be granted and that the Court award the following relief:

a.  that Plaintiff be granted leave to engage in expedited discovery for the limited purpose of preparing for the hearing on Plaintiff's Application for Temporary Injunctive Relief;

b.  that Plaintiff be granted permission to access Defendant Tate's personal email in the possession of the Plaintiff;

c.  that Plaintiff be granted leave to notice, schedule, and take the requested deposition; and that Defendants be required to produce the requested documents and responses to Plaintiff's Requests for Disclosure and First Requests for Production by 5:00 p.m., the 5th day of March, 2018; and

d.  Plaintiff further prays for all such other and further relief, both general and special, at law or in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully submitted:

DARRELL W. COOK & ASSOCIATES
A PROFESSIONAL CORPORATION


/s/ Darrell W. Cook
DARRELL W. COOK
State Bar No. 00787279
dwcook@attorneycook.com
STEPHEN W. DAVIS
State Bar No. 24066792
stephen@attorneycook.com
6688 North Central Expressway, Suite 1000
Dallas, TX 75206
(214)368-4686
(214)593-5713 – Facsimile

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on the _____ day of February, 2018, a true and correct copy of the

above and foregoing was forwarded to the following as a courtesy despite no counsel for the

Defendants having yet made an appearance in this case.


Russell L. Gray                             Randy Ford Taub
KIRKLAND & ELLIS LLP                        Attorney & Counselor at Law
300 North LaSalle                           4325 Windsor Centre Trail, Suite 300
Chicago, IL 60654                           Flower Mound, TX 75028-1866

Manu Bettegowda
67 E. Meadow Road
Wilton, Connecticut, 06897


/s/ Stephen W. Davis
STEPHEN W. DAVIS

# EXHIBIT A

CAUSE NO. _____

| | | |
|---|---|---|
| **REX PERFORMANCE PRODUCTS, LLC,**<br>　　*Plaintiff,* | §<br>§<br>§<br>§ | **IN THE DISTRICT COURT** |
| **v.** | §<br>§ | _____ **JUDICIAL DISTRICT** |
| **JAMES DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS, LLC, and OLYMPUS PARTNERS, L.P.,**<br>　　*Defendants.* | §<br>§<br>§<br>§<br>§<br>§ | **TARRANT COUNTY, TEXAS** |

## PLAINTIFF'S REQUEST FOR DISCLOSURES

TO:　Defendant JAMES DONALD TATE, at 1406 Diar Lane, Keller, Texas, 76248 or wherever he may be found.

TO:　Defendant MANU BETTEGOWDA, at 67 E. Meadow Road, Wilton, Connecticut, 06897 or wherever he may be found.

TO:　Defendant PREGIS PERFORMANCE PRODUCTS, LLC, by and through its Registered Agent, The Corporation Trust Company at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801 or wherever it may be found.

TO:　Defendant OLYMPUS PARTNERS, L.P., by and through its Partner, Manu Bettegowda, at One Station Place, 4th Floor, Stamford Connecticut, 06902 or wherever he may be found.

Pursuant to RULE 194.2(a)-(i) of the TEXAS RULES OF CIVIL PROCEDURE, Plaintiff REX PERFORMANCE PRODUCTS, LLC, by and through Plaintiff's attorney of record, Darrell W. Cook, DARRELL W. COOK & ASSOCIATES, A PROFESSIONAL CORPORATION, serves the following Request for Disclosures to Defendants JAMES DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS, LLC, and OLYMPUS PARTNERS, L.P..

Respectfully submitted:

DARRELL W. COOK & ASSOCIATES
A PROFESSIONAL CORPORATION


/s/ Darrell W. Cook
DARRELL W. COOK
State Bar No. 00787279
dwcook@attorneycook.com
STEPHEN W. DAVIS
State Bar No. 24066792
stephen@attorneycook.com
6688 North Central Expressway, Suite 1000
Dallas, TX 75206
(214)368-4686
(214)593-5713 – Facsimile

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on the _____ day of February, 2018, a true and correct copy of the

above and foregoing PLAINTIFF'S REQUEST FOR DISCLOSURES was forwarded to the following as

a courtesy despite no counsel for the Defendants having yet made an appearance in this case.


Russell L. Gray                            Randy Ford Taub
KIRKLAND & ELLIS LLP                       Attorney & Counselor at Law
300 North LaSalle                          4325 Windsor Centre Trail, Suite 300
Chicago, IL 60654                          Flower Mound, TX 75028-1866

Manu Bettegowda
67 E. Meadow Road
Wilton, Connecticut, 06897


/s/ Stephen W. Davis
STEPHEN W. DAVIS

## REQUESTS FOR DISCLOSURE

**REQUEST FOR DISCLOSURE NUMBER 1:** R.194.2(a).

State the correct names of the parties to the lawsuit.

**REQUEST FOR DISCLOSURE NUMBER 2:** R.194.2(b).

State the name, address, and telephone number of each potential party.

**REQUEST FOR DISCLOSURE NUMBER 3:** R.194.2(c).

State the legal theories and, in general, the factual bases for your claims or defenses.

**REQUEST FOR DISCLOSURE NUMBER 4:** R.194.2(d).

State the amount of economic damages and any method of calculating the damages.

**REQUEST FOR DISCLOSURE NUMBER 5:** R.194.2(e).

State the name, address, and telephone number of persons having knowledge of relevant facts, and state each person's connection with the case.

**REQUEST FOR DISCLOSURE NUMBER 6:** R.194.2(f).

For each individual who may be called by you or your attorney as an expert witness, state:

1.  The expert's name, address, and telephone number;

2.  The subject matter on which the expert will testify;

3.  The mental impressions and opinions held by the expert and the basis for them (or documents reflecting such information if the expert is not retained by, employed by, or otherwise subject to your control);

4.  If the expert is retained by, employed by, or otherwise subject to your control:

    A)   Produce all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

    B)   Produce the expert's current resume and bibliography.

**REQUEST FOR DISCLOSURE NUMBER 7:** R.194.2(g).

Produce any indemnity and insuring agreements as described in Rule 192.3(f).

**REQUEST FOR DISCLOSURE NUMBER 8:** R.194.2(h).

Produce any settlement agreements as described in Rule 192.3(g).

**REQUEST FOR DISCLOSURE NUMBER 9:** R.194.2(i).

Produce any witness statements as described in Rule 192.3(h).

**REQUEST FOR DISCLOSURE NUMBER 10:** R.194.2(j).

Produce all medical records and bills that are reasonably related to the injuries or damages asserted or, in lieu thereof, an authorization permitting the disclosure of such medical records and bills.

**REQUEST FOR DISCLOSURE NUMBER 11:** R.194.2(k).

Produce all medical records and bills obtained by you by virtue of an authorization furnished by Defendant.

CAUSE NO. _____

| | | |
|---|---|---|
| **REX PERFORMANCE PRODUCTS, LLC,**<br>     *Plaintiff,*<br><br>**v.**<br><br>**JAMES DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS, LLC, and OLYMPUS PARTNERS, L.P.**<br>     *Defendants* | § § § § § § § § § § § | **IN THE DISTRICT COURT**<br><br><br>**___ JUDICIAL DISTRICT**<br><br><br>**TARRANT COUNTY, TEXAS** |

### PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT JAMES DONALD TATE

TO:     Defendant JAMES DONALD TATE, at 1406 Diar Lane, Keller, Texas, 76248.

Pursuant to TEXAS RULE OF CIVIL PROCEDURE 196 of the TEXAS RULES OF CIVIL PROCEDURE, Plaintiff REX PERFORMANCE PRODUCTS, LLC, by and through Plaintiff's attorney of record, Darrell W. Cook, DARRELL W. COOK & ASSOCIATES, A PROFESSIONAL CORPORATION, serves the following First Request for Production.

Respectfully submitted,

DARRELL W. COOK & ASSOCIATES,
A PROFESSIONAL CORPORATION

/s/Darrell W. Cook_____
DARRELL W. COOK
State Bar No. 00787279
dwcook@attorneycook.com
STEPHEN W. DAVIS
State Bar No. 24066792
stephen@attorneycook.com
6688 North Central Expressway, Suite 1000
Dallas, Texas 75206
214-368-4686 - Telephone
214-593-5713 – Facsimile

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on the _____ day of February, 2018, a true and correct copy of the above and foregoing PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT JAMES DONALD TATE was forwarded to the following in accordance with the TEXAS RULES OF CIVIL PROCEDURE:

Russell L. Gray
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654

Randy Ford Taub
Attorney & Counselor at Law
4325 Windsor Centre Trail, Suite 300
Flower Mound, TX 75028-1866

Manu Bettegowda
67 E. Meadow Road
Wilton, Connecticut, 06897

/s/ Stephen W. Davis
STEPHEN W. DAVIS

## INSTRUCTIONS

1.      Pursuant to the Court's attached Order Granting Expedited Discovery, all responses to these requests must be served on or before _____.  In responding to this Request for Production, Plaintiff requests Defendant to serve a written response, along with responsive documents, in accordance with the Court's order granting expedited discovery.  Plaintiff further requests Defendant to supplement Defendant's Response by providing additional documents, without the necessity for requests for supplementation, as Defendant or any other person acting on Defendant's behalf may hereafter generate or obtain and/or which augment or otherwise modify the initial responses given to Plaintiff's First Request for Production.  Such supplemental responses, if any, together with any additional documents, shall be served upon Plaintiff's attorney immediately after Defendant's receipt or generation of such documents, but in no case later than fourteen (14) days prior to trial.

2.      Answer each request for documents separately by listing the documents and by describing them as defined below.  If documents produced in response to this request are numbered for production, in each response provide both the information that identifies the document and the document's number.

3.      For a document that no longer exists or that cannot be located, identify the document, state how and when it passed out of existence, or when it no longer could be located, and the reasons for the disappearance.  Also, identify each person having knowledge about the disposition or loss of the document, and identify any other document evidencing the lost document's existence or any other facts about the lost document.

4.      When identifying the document, you must state the following

   a.      The nature of the document (e.g. letter, handwritten note).

   b.      The title or heading that appears on the document.

   c.      The date of the document and the date of each addendum, supplement, or other addition or change.

   d.      The identity of author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered.

5.      When identifying the person, you must state the following:

   a.      The full name.

   b.      The present or last known residential address and office telephone number.

   c.      The present or last known office address and office telephone number.

   d.      The present occupation, job title, employer, and employer's address.

## DEFINITIONS

The following definitions shall have the following meanings, unless the context requires otherwise:

1. The singular includes the plural and vice versa. The masculine includes the feminine and neutral genders. The conjunctive ("and") shall include the disjunctive ("or") and vice versa. "Any" shall also mean "all" and vice versa.  The past tense includes the present tense (and vice versa) where the clear meaning is not distorted by change of tense.

2. "Plaintiff" or "Defendant" as well as a party's full or abbreviated name or a pronoun referring to a party's full or abbreviated name or a pronoun referring to a party, means the party, and where applicable, the party's agents representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the party or under the party's control, whether directly or indirectly, including any attorney

3. "Tate" means JAMES DONALD TATE, his successors, predecessors, agents, assigns, employees, representatives, and all other persons acting either directly or indirectly on behalf of JAMES DONALD TATE.

4. "Bettegowda" means MANU BETTEGOWDA, his successors, predecessors, agents, assigns, employees, representatives, and all other persons acting either directly or indirectly on behalf of MANU BETTEGOWDA.

5. "Cuffia" means MICHAEL CUFFIA, his successors, predecessors, agents, assigns, employees, representatives, and all other persons acting either directly or indirectly on behalf of MICHAEL CUFFIA.

6. "Smith" means JEFF SMITH, his successors, predecessors, agents, assigns, employees, representatives, and all other persons acting either directly or indirectly on behalf of JEFF SMITH.

7. "Olympus" means OLYMPUS PARTNERS, LP, is parent entities, agents representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the party or under the party's control, whether directly or indirectly, including any attorney.

8. "Pregis" means PREGIS PERFORMANCE PARTNERS, LLC, is parent entities, agents representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the party or under the party's control, whether directly or indirectly, including any attorney.

9. "Person" means any natural person, corporation, firm, association, partnership, joint venture, proprietorship, governmental body, or any other organization, business or legal entity and all predecessors or successor-in-interest.

10. "Relating" or "related" means referring to, having any relationship to, pertaining to, evidencing or constituting evidence of, in whole or in part, the subject matter of this request.

11. "Concerning" means, in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, or constituting.

12. "Communication" means any sending, receipt, or exchange of information or messages regardless of the form or medium used. It includes, without limitation, such things as correspondence, faxes, telexes, telegrams, electronic mail, text messages, telephone calls, voice mail, recorded messages, meetings, nods of the head or other nonverbal signals, conversations, and face-to-face encounters.

13. "Date" means the exact date, month, and year, if ascertainable, or if not, the best available approximation.

14. The word "and" means "and/or".

15. The word "or" means "or/and".

16. "Document" means any printed, written, recorded, or graphic matter of any kind whatsoever, whether on paper, floppy disk, hard disk, computer file, cassette tape, or any other medium. The term is intended to embrace every conceivable memorialization of any alphabetic characters, images (still or moving), sounds, symbols, figures, dollars, or computations (or any combination of same) and obviously includes, without limitation, such things as correspondence, memorandums, electronic mail, voice mail, answering machine or other recordings, handwritten notes, phone message slips, diagrams, charts, schedules, daily calendars, invoices, purchase orders, forms of any kind, spreadsheets, accounting records, bank statements, canceled checks, check registers, compact disc, DVDs, envelopes, phone bills, faxes, agreement or insurance policy, photographs, slides, sound recordings, videotapes, sketches, internet web-sites, computer programs, tape-recorded telephone conversations, and any thing stored on or accessible with a telecommunications device of any kind, a computer, computing device, or any network.

17. "Possession, custody, or control" of an item means that the person either has physical possession of the item or has a right to possession equal or superior to that of the person who has physical possession of the item.

18. "File" means any collection or group of documents maintained, held, stored, or used together, including, without limitation, all collections of documents maintained, held, or stored in folders, notebooks, or other devices for separating or organizing documents.

19. "Identify" or "describe," when referring to a person, means you must state the following:

    a. The full name.

    b. The present or last known residential address and residential telephone number

    c.   The present or last known office address and office telephone number.

    d.   The present occupation, job title, employer, and employer's address at the time of the event or period referred to in each particular request.

    e.   In the case of any entity, identify the officer, employee, or agent most closely connected with the subject matter of the request and identify the officer who is responsible for supervising that officer or employee.

20. "Identify" or "describe," when referring to a document, means you must state the following:

    a.   The nature (e.g., letter, handwritten note) of the document.

    b.   The title or heading that appears on the document.

    c.   The date of the document and the date of each addendum, supplement, or other addition or change.

    d.   The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered.

    e.   The present location of the document, and the name, address, position or title, and telephone number of the person or persons having custody of the document.

21. "Including" or "includes" means "including, but not limited to" or "includes, but is not limited to."

22. "Relating" or "related" means referring to, having any relationship to, pertaining to, evidencing or constituting evidence of, in whole or in part, the subject matter of this request.

23. "Super Bonus" shall be defined in the same manner as the term is used in the emails attached to Plaintiff's Original Petition as Exhibits 1-6.

## DOCUMENT REQUESTS

**Time Period**:  Unless stated otherwise, each request seeks documents from January 1, 2016 to present.

**REQUEST FOR PRODUCTION NUMBER 1:**  Any and all contracts and/or agreements between Tate, Cuffia, and/or Smith on the one hand and Pregis, Olympus, and/or Bettegowda on the other hand.
>    **RESPONSE:**


**REQUEST FOR PRODUCTION NUMBER 2:**   All documents evidencing any communications between Tate, and any of the following persons or entities: (1) Cuffia, (2) Smith, (3) Bettegowda, (4) Pregis, and/or (5) Olympus, including, without limitation, communications related to the payment of any Super Bonus. This request includes, but it not limited to, any and all emails kept on Tate's Rex Performance Products, LLC email account and Tate's personal email account: abtate31@yahoo.com.
>    **RESPONSE:**


**REQUEST FOR PRODUCTION NUMBER 3:** Any and all documents evidencing any money received by Tate, Cuffia, and/or Smith from Pregis, Olympus, Bettegowda or any other parties as a result of the Asset Purchase Agreement between Pregis and Rex Performance Products, LLC.
>    **RESPONSE:**


**REQUEST FOR PRODUCTION NUMBER 4:** Any notes, memorandum, diaries, day planners, calendars or other documents kept by Tate that reflect Tate's last ninety (90) days of employment with Rex Performance Products, LLC, including, but not limited to, documents regarding any meetings, negotiations, and/or communications with or about the following parties: (1) Cuffia, (2) Smith, (3) Bettegowda, (4) Pregis, (5) Olympus, (6) Rex Performance Products, LLC, (7) Rex Hansen, (8) John Ballinger, and/or (9) Robert Story.
>    **RESPONSE:**


**REQUEST FOR PRODUCTION NUMBER 5:** Documents relating or referring to the terms or conditions of your relationship with Pregis and/or Olympus, including, without limitation, job description, salary, bonuses, commission rates, advances, sick leave, vacation leave, health benefits, and any other benefits or compensation provided or offered to you by Pregis, Olympus, and/or Bettegowda.
>    **RESPONSE:**

**REQUEST FOR PRODUCTION NUMBER 6:** All documents relating to any communications, correspondence, or agreements between any agent, servant, partner of either Olympus or Pregis and any former or current employee(s) of Rex Performance Products, LLC.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NUMBER 7:** All personal computers or personal communication devices (e.g., cell phones or tablets) that you have owned, possessed, or had control of for the past one year.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NUMBER 8:** All communications between or among the Defendants since November, 2017 relating to or concerning Rex Performance Products, LLC, and any Super Bonus to be paid by and among the Defendants.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NUMBER 9:** All documents evidencing any communications between Tate, and any of the following persons or entities: (1) Nilesh Amrutiya; (2) Ryan Bigler; (3) Corey Bisnett; (4) Lisa Bonner; (5) Dave Herschelman; (6) Matthew Robinet; (7) Collin; and (8) Chip as listed in Exhibit 7 attached to Plaintiff's Original Petition, including, without limitation, communications related to the payment of any Bonus. This request includes, but is not limited to, any and all emails kept on Tate's RPP email and Tate's personal email account abtate31@yahoo.com.

    **RESPONSE:**

CAUSE NO. _____

| | | |
|---|---|---|
| **REX PERFORMANCE PRODUCTS, LLC,** | § | **IN THE DISTRICT COURT** |
|    *Plaintiff,* | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | **___ JUDICIAL DISTRICT** |
| **JAMES DONALD TATE, MANU** | § | |
| **BETTEGOWDA, PREGIS** | § | |
| **PERFORMANCE PRODUCTS, LLC,** | § | |
| **and OLYMPUS PARTNERS, L.P.** | § | |
|    *Defendants* | § | **TARRANT COUNTY, TEXAS** |

### PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT MANU BETTEGOWDA

TO:   Defendant MANU BETTEGOWDA, at 67 E. Meadow Road, Wilton, Connecticut, 06897 or wherever he may be found.

Pursuant to TEXAS RULE OF CIVIL PROCEDURE 196 of the TEXAS RULES OF CIVIL PROCEDURE, Plaintiff REX PERFORMANCE PRODUCTS, LLC, by and through Plaintiff's attorney of record, Darrell W. Cook, DARRELL W. COOK & ASSOCIATES, A PROFESSIONAL CORPORATION, serves the following First Request for Production.

Respectfully submitted,

DARRELL W. COOK & ASSOCIATES,
A PROFESSIONAL CORPORATION

/s/Darrell W. Cook_____
DARRELL W. COOK
State Bar No. 00787279
dwcook@attorneycook.com
STEPHEN W. DAVIS
State Bar No. 24066792
stephen@attorneycook.com
6688 North Central Expressway, Suite 1000
Dallas, Texas 75206
214-368-4686 - Telephone
214-593-5713 – Facsimile

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on the _____ day of February, 2018, a true and correct copy of the above and foregoing PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT MANU BETTEGOWDA was forwarded to the following in accordance with the TEXAS RULES OF CIVIL PROCEDURE:

Russell L. Gray
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654

Randy Ford Taub
Attorney & Counselor at Law
4325 Windsor Centre Trail, Suite 300
Flower Mound, TX 75028-1866

Manu Bettegowda
67 E. Meadow Road
Wilton, Connecticut, 06897

/s/ Stephen W. Davis
STEPHEN W. DAVIS

## INSTRUCTIONS

1.  Pursuant to the Court's attached Order Granting Expedited Discovery, all responses to these requests must be served on or before _____.  In responding to this Request for Production, Plaintiff requests Defendant to serve a written response, along with responsive documents, in accordance with the Court's order granting expedited discovery. Plaintiff further requests Defendant to supplement Defendant's Response by providing additional documents, without the necessity for requests for supplementation, as Defendant or any other person acting on Defendant's behalf may hereafter generate or obtain and/or which augment or otherwise modify the initial responses given to Plaintiff's First Request for Production. Such supplemental responses, if any, together with any additional documents, shall be served upon Plaintiff's attorney immediately after Defendant's receipt or generation of such documents, but in no case later than fourteen (14) days prior to trial.

2.  Answer each request for documents separately by listing the documents and by describing them as defined below.  If documents produced in response to this request are numbered for production, in each response provide both the information that identifies the document and the document's number.

3.  For a document that no longer exists or that cannot be located, identify the document, state how and when it passed out of existence, or when it no longer could be located, and the reasons for the disappearance.  Also, identify each person having knowledge about the disposition or loss of the document, and identify any other document evidencing the lost document's existence or any other facts about the lost document.

4.  When identifying the document, you must state the following

    a.   The nature of the document (e.g. letter, handwritten note).

    b.   The title or heading that appears on the document.

    c.   The date of the document and the date of each addendum, supplement, or other addition or change.

    d.   The identity of author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered.

5.  When identifying the person, you must state the following:

    a.   The full name.

    b.   The present or last known residential address and office telephone number.

    c.   The present or last known office address and office telephone number.

    d.   The present occupation, job title, employer, and employer's address.

## DEFINITIONS

The following definitions shall have the following meanings, unless the context requires otherwise:

1. The singular includes the plural and vice versa. The masculine includes the feminine and neutral genders. The conjunctive ("and") shall include the disjunctive ("or") and vice versa. "Any" shall also mean "all" and vice versa. The past tense includes the present tense (and vice versa) where the clear meaning is not distorted by change of tense.

2. "Plaintiff" or "Defendant" as well as a party's full or abbreviated name or a pronoun referring to a party's full or abbreviated name or a pronoun referring to a party, means the party, and where applicable, the party's agents representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the party or under the party's control, whether directly or indirectly, including any attorney

3. "Tate" means JAMES DONALD TATE, his successors, predecessors, agents, assigns, employees, representatives, and all other persons acting either directly or indirectly on behalf of JAMES DONALD TATE.

4. "Bettegowda" means MANU BETTEGOWDA, his successors, predecessors, agents, assigns, employees, representatives, and all other persons acting either directly or indirectly on behalf of MANU BETTEGOWDA.

5. "Cuffia" means MICHAEL CUFFIA, his successors, predecessors, agents, assigns, employees, representatives, and all other persons acting either directly or indirectly on behalf of MICHAEL CUFFIA.

6. "Smith" means JEFF SMITH, his successors, predecessors, agents, assigns, employees, representatives, and all other persons acting either directly or indirectly on behalf of JEFF SMITH.

7. "Olympus" means OLYMPUS PARTNERS, LP, is parent entities, agents representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the party or under the party's control, whether directly or indirectly, including any attorney.

8. "Pregis" means PREGIS PERFORMANCE PARTNERS, LLC, is parent entities, agents representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the party or under the party's control, whether directly or indirectly, including any attorney.

9. "Person" means any natural person, corporation, firm, association, partnership, joint venture, proprietorship, governmental body, or any other organization, business or legal entity and all predecessors or successor-in-interest.

10. "Relating" or "related" means referring to, having any relationship to, pertaining to, evidencing or constituting evidence of, in whole or in part, the subject matter of this request.

11. "Concerning" means, in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, or constituting.

12. "Communication" means any sending, receipt, or exchange of information or messages regardless of the form or medium used. It includes, without limitation, such things as correspondence, faxes, telexes, telegrams, electronic mail, text messages, telephone calls, voice mail, recorded messages, meetings, nods of the head or other nonverbal signals, conversations, and face-to-face encounters.

13. "Date" means the exact date, month, and year, if ascertainable, or if not, the best available approximation.

14. The word "and" means "and/or".

15. The word "or" means "or/and".

16. "Document" means any printed, written, recorded, or graphic matter of any kind whatsoever, whether on paper, floppy disk, hard disk, computer file, cassette tape, or any other medium.  The term is intended to embrace every conceivable memorialization of any alphabetic characters, images (still or moving), sounds, symbols, figures, dollars, or computations (or any combination of same) and obviously includes, without limitation, such things as correspondence, memorandums, electronic mail, voice mail, answering machine or other recordings, handwritten notes, phone message slips, diagrams, charts, schedules, daily calendars, invoices, purchase orders, forms of any kind, spreadsheets, accounting records, bank statements, canceled checks, check registers, compact disc, DVDs, envelopes, phone bills, faxes, agreement or insurance policy, photographs, slides, sound recordings, videotapes, sketches, internet web-sites, computer programs, tape-recorded telephone conversations, and any thing stored on or accessible with a telecommunications device of any kind, a computer, computing device, or any network.

17. "Possession, custody, or control" of an item means that the person either has physical possession of the item or has a right to possession equal or superior to that of the person who has physical possession of the item.

18. "File" means any collection or group of documents maintained, held, stored, or used together, including, without limitation, all collections of documents maintained, held, or stored in folders, notebooks, or other devices for separating or organizing documents.

19. "Identify" or "describe," when referring to a person, means you must state the following:

    a. The full name.

    b. The present or last known residential address and residential telephone number

c.   The present or last known office address and office telephone number.

d.   The present occupation, job title, employer, and employer's address at the time of the event or period referred to in each particular request.

e.   In the case of any entity, identify the officer, employee, or agent most closely connected with the subject matter of the request and identify the officer who is responsible for supervising that officer or employee.

20. "Identify" or "describe," when referring to a document, means you must state the following:

a.   The nature (e.g., letter, handwritten note) of the document.

b.   The title or heading that appears on the document.

c.   The date of the document and the date of each addendum, supplement, or other addition or change.

d.   The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered.

e.   The present location of the document, and the name, address, position or title, and telephone number of the person or persons having custody of the document.

21. "Including" or "includes" means "including, but not limited to" or "includes, but is not limited to."

22. "Relating" or "related" means referring to, having any relationship to, pertaining to, evidencing or constituting evidence of, in whole or in part, the subject matter of this     request.

23. "Super Bonus" shall be defined in the same manner as the term is used in the emails attached to Plaintiff's Original Petition as Exhibits 1-6.

## DOCUMENT REQUESTS

**Time Period**:  Unless stated otherwise, each request seeks documents from January 1, 2016 to present.

**REQUEST FOR PRODUCTION NUMBER 1:**  Any and all contracts and/or agreements between Tate, Cuffia, and/or Smith on the one hand and Pregis, Olympus, and/or Bettegowda on the other hand.
      **RESPONSE:**


**REQUEST FOR PRODUCTION NUMBER 2:**  All documents evidencing any communications between Bettegowda, and any of the following persons or entities: (1) Cuffia, (2) Smith, (3) Tate, (4) Pregis, and/or (5) Olympus, including, without limitation, communications related to the payment of any Super Bonus to any party. This request includes, but it not limited to, any and all emails from Tate's Rex Performance Products, LLC email account and/or Tate's personal email account: abtate31@yahoo.com; or any and all emails from any personal or professional email account used by Bettegowda, Cuffia, Smith, or any agent, representative, or employee of Pregis or Olympus.
      **RESPONSE:**


**REQUEST FOR PRODUCTION NUMBER 3:**  Any and all documents evidencing any money received by Tate, Cuffia, and/or Smith from Pregis, Olympus, Bettegowda or any other parties as a result of the Asset Purchase Agreement between Pregis and Rex Performance Products, LLC.
      **RESPONSE:**


**REQUEST FOR PRODUCTION NUMBER 4:**  Any notes, memorandum, diaries, day planners, calendars or other documents kept by Bettegowda that reflect Bettegowda's last ninety (90) days, including, but not limited to, documents regarding any meetings, negotiations, and/or communications with or about the following: (1) Cuffia, (2) Smith, (3) Tate, (4) Pregis, (5) Olympus, (6) Rex Performance Products, LLC, (7) Rex Hansen, (8) John Ballinger, (9) Robert Story; and/or (10) bonuses paid to Tate, Cuffia, Smith, or any other employee of Rex Performance Products, LLC.
      **RESPONSE:**


**REQUEST FOR PRODUCTION NUMBER 5:**  Documents relating or referring to the terms or conditions of your relationship with Pregis and/or Olympus, including, without limitation, job description, decision making authority, position, salary, bonuses, commission rates, and any other benefits or compensation provided or offered by Pregis and/or Olympus specifically related to Rex Performance Products, LLC and/or Pregis.
      **RESPONSE:**

**REQUEST FOR PRODUCTION NUMBER 6:** All documents relating to any communications, correspondence, or agreements between any agent, servant, partner of either Olympus or Pregis and any former or current employee(s) of Rex Performance Products, LLC.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NUMBER 7:** All documents relating to any communications, correspondence, or agreements between Bettegowda and any agent, employee, officer, representative, servant, and/or partner of either Olympus or Pregis related to and including, but not limited to, (1) Rex Performance Products, LLC, (2) the asset purchase agreement between Pregis and Rex Performance Products, LLC, (3) Tate, (4) Cuffia, (5) Smith, (6) retention of any employees, officers, or directors of Rex Performance Productions, LLC after acquisition by Pregis, and/or (7) any compensation of any kind paid to Tate, Cuffia, Smith, or any other employee of Rex Performance Products, LLC.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NUMBER 8:** All personal computers or personal communication devices (e.g., cell phones or tablets) that you have owned, possessed, or had control of for the past one year.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NUMBER 9:** All communications between or among the Defendants since November, 2017 relating to or concerning Rex Performance Products, LLC, and any Super Bonus to be paid by and among the Defendants.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NUMBER 10:** All documents evidencing any communications between Bettegowda, Tate, Cuffia, and/or Smith, and any of the following persons or entities: (1) Nilesh Amrutiya; (2) Ryan Bigler; (3) Corey Bisnett; (4) Lisa Bonner; (5) Dave Herschelman; (6) Matthew Robinet; (7) Collin; and (8) Chip as listed in Exhibit 7 attached to Plaintiff's Original Petition, including, without limitation, communications related to the payment of any Bonus. This request includes, but is not limited to, any and all emails to Tate at his Rex Performance Products, LLC email or Tate's personal email account abtate31@yahoo.com and any professional or personal email accounts used by any of the other named persons included in this request.

> **RESPONSE:**

CAUSE NO. _____

| | | |
|---|---|---|
| **REX PERFORMANCE PRODUCTS, LLC,** | § | **IN THE DISTRICT COURT** |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | **___ JUDICIAL DISTRICT** |
| **JAMES DONALD TATE, MANU** | § | |
| **BETTEGOWDA, PREGIS** | § | |
| **PERFORMANCE PRODUCTS, LLC,** | § | |
| **and OLYMPUS PARTNERS, L.P.** | § | |
| *Defendants* | § | **TARRANT COUNTY, TEXAS** |

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT PREGIS PERFORMANCE PRODUCTS, LLC

TO:    Defendant PREGIS PERFORMANCE PRODUCTS, LLC, by and through its Registered Agent, The Corporation Trust Company at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801 or wherever it may be found.

Pursuant to TEXAS RULE OF CIVIL PROCEDURE 196 of the TEXAS RULES OF CIVIL PROCEDURE, Plaintiff REX PERFORMANCE PRODUCTS, LLC, by and through Plaintiff's attorney of record, Darrell W. Cook, DARRELL W. COOK & ASSOCIATES, A PROFESSIONAL CORPORATION, serves the following First Request for Production.

Respectfully submitted,

DARRELL W. COOK & ASSOCIATES,
A PROFESSIONAL CORPORATION


/s/Darrell W. Cook_____
DARRELL W. COOK
State Bar No. 00787279
dwcook@attorneycook.com
STEPHEN W. DAVIS
State Bar No. 24066792
stephen@attorneycook.com
6688 North Central Expressway, Suite 1000
Dallas, Texas 75206
214-368-4686 - Telephone
214-593-5713 – Facsimile

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on the \_\_\_\_\_ day of February, 2018, a true and correct copy of the above and foregoing PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT PREGIS PERFORMANCE PRODUCTS, LLC was forwarded to the following in accordance with the TEXAS RULES OF CIVIL PROCEDURE:

Russell L. Gray                                   Randy Ford Taub
KIRKLAND & ELLIS LLP                    Attorney & Counselor at Law
300 North LaSalle                               4325 Windsor Centre Trail, Suite 300
Chicago, IL 60654                              Flower Mound, TX 75028-1866

Manu Bettegowda
67 E. Meadow Road
Wilton, Connecticut, 06897


/s/ Stephen W. Davis_____
STEPHEN W. DAVIS

## INSTRUCTIONS

1.    Pursuant to the Court's attached Order Granting Expedited Discovery, all responses to these requests must be served on or before _____.  In responding to this Request for Production, Plaintiff requests Defendant to serve a written response, along with responsive documents, in accordance with the Court's order granting expedited discovery. Plaintiff further requests Defendant to supplement Defendant's Response by providing additional documents, without the necessity for requests for supplementation, as Defendant or any other person acting on Defendant's behalf may hereafter generate or obtain and/or which augment or otherwise modify the initial responses given to Plaintiff's First Request for Production.  Such supplemental responses, if any, together with any additional documents, shall be served upon Plaintiff's attorney immediately after Defendant's receipt or generation of such documents, but in no case later than fourteen (14) days prior to trial.

2.    Answer each request for documents separately by listing the documents and by describing them as defined below.  If documents produced in response to this request are numbered for production, in each response provide both the information that identifies the document and the document's number.

3.    For a document that no longer exists or that cannot be located, identify the document, state how and when it passed out of existence, or when it no longer could be located, and the reasons for the disappearance.  Also, identify each person having knowledge about the disposition or loss of the document, and identify any other document evidencing the lost document's existence or any other facts about the lost document.

4.    When identifying the document, you must state the following

    a.    The nature of the document (e.g. letter, handwritten note).

    b.    The title or heading that appears on the document.

    c.    The date of the document and the date of each addendum, supplement, or other addition or change.

    d.    The identity of author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered.

5.    When identifying the person, you must state the following:

    a.    The full name.

    b.    The present or last known residential address and office telephone number.

    c.    The present or last known office address and office telephone number.

    d.    The present occupation, job title, employer, and employer's address.

## DEFINITIONS

The following definitions shall have the following meanings, unless the context requires otherwise:

1. The singular includes the plural and vice versa. The masculine includes the feminine and neutral genders. The conjunctive ("and") shall include the disjunctive ("or") and vice versa. "Any" shall also mean "all" and vice versa.  The past tense includes the present tense (and vice versa) where the clear meaning is not distorted by change of tense.

2. "Plaintiff" or "Defendant" as well as a party's full or abbreviated name or a pronoun referring to a party's full or abbreviated name or a pronoun referring to a party, means the party, and where applicable, the party's agents representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the party or under the party's control, whether directly or indirectly, including any attorney

3. "Tate" means JAMES DONALD TATE, his successors, predecessors, agents, assigns, employees, representatives, and all other persons acting either directly or indirectly on behalf of JAMES DONALD TATE.

4. "Bettegowda" means MANU BETTEGOWDA, his successors, predecessors, agents, assigns, employees, representatives, and all other persons acting either directly or indirectly on behalf of MANU BETTEGOWDA.

5. "Cuffia" means MICHAEL CUFFIA, his successors, predecessors, agents, assigns, employees, representatives, and all other persons acting either directly or indirectly on behalf of MICHAEL CUFFIA.

6. "Smith" means JEFF SMITH, his successors, predecessors, agents, assigns, employees, representatives, and all other persons acting either directly or indirectly on behalf of JEFF SMITH.

7. "Olympus" means OLYMPUS PARTNERS, LP, is parent entities, agents representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the party or under the party's control, whether directly or indirectly, including any attorney.

8. "Pregis" means PREGIS PERFORMANCE PARTNERS, LLC, is parent entities, agents representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the party or under the party's control, whether directly or indirectly, including any attorney.

9. "Person" means any natural person, corporation, firm, association, partnership, joint venture, proprietorship, governmental body, or any other organization, business or legal entity and all predecessors or successor-in-interest.

10. "Relating" or "related" means referring to, having any relationship to, pertaining to, evidencing or constituting evidence of, in whole or in part, the subject matter of this request.

11. "Concerning" means, in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, or constituting.

12. "Communication" means any sending, receipt, or exchange of information or messages regardless of the form or medium used. It includes, without limitation, such things as correspondence, faxes, telexes, telegrams, electronic mail, text messages, telephone calls, voice mail, recorded messages, meetings, nods of the head or other nonverbal signals, conversations, and face-to-face encounters.

13. "Date" means the exact date, month, and year, if ascertainable, or if not, the best available approximation.

14. The word "and" means "and/or".

15. The word "or" means "or/and".

16. "Document" means any printed, written, recorded, or graphic matter of any kind whatsoever, whether on paper, floppy disk, hard disk, computer file, cassette tape, or any other medium. The term is intended to embrace every conceivable memorialization of any alphabetic characters, images (still or moving), sounds, symbols, figures, dollars, or computations (or any combination of same) and obviously includes, without limitation, such things as correspondence, memorandums, electronic mail, voice mail, answering machine or other recordings, handwritten notes, phone message slips, diagrams, charts, schedules, daily calendars, invoices, purchase orders, forms of any kind, spreadsheets, accounting records, bank statements, canceled checks, check registers, compact disc, DVDs, envelopes, phone bills, faxes, agreement or insurance policy, photographs, slides, sound recordings, videotapes, sketches, internet web-sites, computer programs, tape-recorded telephone conversations, and any thing stored on or accessible with a telecommunications device of any kind, a computer, computing device, or any network.

17. "Possession, custody, or control" of an item means that the person either has physical possession of the item or has a right to possession equal or superior to that of the person who has physical possession of the item.

18. "File" means any collection or group of documents maintained, held, stored, or used together, including, without limitation, all collections of documents maintained, held, or stored in folders, notebooks, or other devices for separating or organizing documents.

19. "Identify" or "describe," when referring to a person, means you must state the following:

    a. The full name.

    b. The present or last known residential address and residential telephone number

    c.  The present or last known office address and office telephone number.

    d.  The present occupation, job title, employer, and employer's address at the time of the event or period referred to in each particular request.

    e.  In the case of any entity, identify the officer, employee, or agent most closely connected with the subject matter of the request and identify the officer who is responsible for supervising that officer or employee.

20. "Identify" or "describe," when referring to a document, means you must state the following:

    a.  The nature (e.g., letter, handwritten note) of the document.

    b.  The title or heading that appears on the document.

    c.  The date of the document and the date of each addendum, supplement, or other addition or change.

    d.  The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered.

    e.  The present location of the document, and the name, address, position or title, and telephone number of the person or persons having custody of the document.

21. "Including" or "includes" means "including, but not limited to" or "includes, but is not limited to."

22. "Relating" or "related" means referring to, having any relationship to, pertaining to, evidencing or constituting evidence of, in whole or in part, the subject matter of this request.

23. "Super Bonus" shall be defined in the same manner as the term is used in the emails attached to Plaintiff's Original Petition as Exhibits 1-6.

## DOCUMENT REQUESTS

**Time Period**:  Unless stated otherwise, each request seeks documents from January 1, 2016 to present.

**REQUEST FOR PRODUCTION NUMBER 1:**  Any and all contracts and/or agreements between Tate, Cuffia, and/or Smith on the one hand and Pregis, Olympus, and/or Bettegowda on the other hand.
> **RESPONSE:**


**REQUEST FOR PRODUCTION NUMBER 2:**  All documents evidencing any communications between Pregis, and any of the following persons or entities: (1) Cuffia, (2) Smith, (3) Tate, (4) Bettegowda, and/or (5) Olympus, including, without limitation, communications related to the payment of any Super Bonus to any party. This request includes, but it not limited to, any and all emails from Tate's Rex Performance Products, LLC email account and/or Tate's personal email account: abtate31@yahoo.com; or any and all emails from any personal or professional email account used by Bettegowda, Cuffia, Smith, or any agent, representative, or employee of Pregis or Olympus.
> **RESPONSE:**


**REQUEST FOR PRODUCTION NUMBER 3:** Any and all documents evidencing any money received by Tate, Cuffia, and/or Smith from Pregis, Olympus, Bettegowda or any other parties as a result of the Asset Purchase Agreement between Pregis and Rex Performance Products, LLC.
> **RESPONSE:**


**REQUEST FOR PRODUCTION NUMBER 4:** Any notes, memorandum, diaries, day planners, calendars or other documents kept by Pregis that reflect Pregis' last ninety (90) days, including, but not limited to, documents regarding any meetings, negotiations, and/or communications with or about the following: (1) Cuffia, (2) Smith, (3) Tate, (4) Bettegowda, (5) Olympus, (6) Rex Performance Products, LLC, (7) Rex Hansen, (8) John Ballinger, (9) Robert Story; and/or (10) bonuses paid to Tate, Cuffia, Smith, or any other employee of Rex Performance Products, LLC.
> **RESPONSE:**


**REQUEST FOR PRODUCTION NUMBER 5:** Documents relating or referring to the terms or conditions of your relationship with Bettegowda and/or Olympus, including, without limitation, contracts, agreements, operating agreements, partnership agreements, joint venture agreements, promissory notes, financing agreements, resolutions, and any benefits or compensation provided or offered by Pregis, Bettegowda, and/or Olympus specifically related to the asset purchase agreement between Rex Performance Products, LLC and Pregis or compensation or bonuses provided to any employees, officers, or members of Rex Performance Products, LLC.
> **RESPONSE:**

**REQUEST FOR PRODUCTION NUMBER 6:** All documents relating to any communications, correspondence, or agreements between any agent, servant, partner of either Olympus or Pregis and any former or current employee(s) of Rex Performance Products, LLC, including, but not limited to, Tate, Cuffia, or Smith.

**RESPONSE:**

**REQUEST FOR PRODUCTION NUMBER 7:** All documents relating to any communications, correspondence, or agreements between Pregis and any agent, employee, officer, representative, servant, and/or partner of Olympus, Tate, Cuffia, and/or Smith related to and including, but not limited to, (1) Rex Performance Products, LLC, (2) the asset purchase agreement between Pregis and Rex Performance Products, LLC, (3) Tate, (4) Cuffia, (5) Smith, (6) Bettegowda, (7) retention of any employees, officers, or directors of Rex Performance Productions, LLC after acquisition by Pregis, and/or (8) any compensation of any kind paid to Tate, Cuffia, Smith, Bettegowda, or any employee of Rex Performance Products, LLC.

**RESPONSE:**

**REQUEST FOR PRODUCTION NUMBER 8:** All communications between or among the Defendants since November, 2017 relating to or concerning Rex Performance Products, LLC, and any Super Bonus to be paid by and among the Defendants.

**RESPONSE:**

**REQUEST FOR PRODUCTION NUMBER 9:** All documents evidencing any communications between Pregis, Olympus, Bettegowda, Tate, Cuffia, and/or Smith, and any of the following persons or entities: (1) Nilesh Amrutiya; (2) Ryan Bigler; (3) Corey Bisnett; (4) Lisa Bonner; (5) Dave Herschelman; (6) Matthew Robinet; (7) Collin; and (8) Chip as listed in Exhibit 7 attached to Plaintiff's Original Petition, including, without limitation, communications related to the payment of any Bonus. This request includes, but is not limited to, any and all emails to Tate at his Rex Performance Products, LLC email and Tate's personal email account abtate31@yahoo.com and any professional or personal email accounts used by any of the other named persons included in this request.

**RESPONSE:**

CAUSE NO. _____

| | | |
|---|---|---|
| **REX PERFORMANCE PRODUCTS, LLC,** | § | **IN THE DISTRICT COURT** |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | **___ JUDICIAL DISTRICT** |
| **JAMES DONALD TATE, MANU** | § | |
| **BETTEGOWDA, PREGIS** | § | |
| **PERFORMANCE PRODUCTS, LLC,** | § | |
| **and OLYMPUS PARTNERS, L.P.** | § | |
| *Defendants* | § | **TARRANT COUNTY, TEXAS** |

### PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT OLYMPUS PARTNERS, L.P.

TO:   Defendant OLYMPUS PARTNERS, L.P., by and through its Partner, Manu Bettegowda, at One Station Place, 4th Floor, Stamford Connecticut, 06902 or wherever he may be found.

Pursuant to TEXAS RULE OF CIVIL PROCEDURE 196 of the TEXAS RULES OF CIVIL PROCEDURE, Plaintiff REX PERFORMANCE PRODUCTS, LLC, by and through Plaintiff's attorney of record, Darrell W. Cook, DARRELL W. COOK & ASSOCIATES, A PROFESSIONAL CORPORATION, serves the following First Request for Production.

Respectfully submitted,

DARRELL W. COOK & ASSOCIATES,
A PROFESSIONAL CORPORATION


/s/Darrell W. Cook
DARRELL W. COOK
State Bar No. 00787279
dwcook@attorneycook.com
STEPHEN W. DAVIS
State Bar No. 24066792
stephen@attorneycook.com
6688 North Central Expressway, Suite 1000
Dallas, Texas 75206
214-368-4686 - Telephone
214-593-5713 – Facsimile

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on the _____ day of February, 2018, a true and correct copy of the

above and foregoing PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT OLYMPUS

PARTNERS, L.P. was forwarded to the following in accordance with the TEXAS RULES OF CIVIL

PROCEDURE:

Russell L. Gray
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654

Manu Bettegowda
67 E. Meadow Road
Wilton, Connecticut, 06897

Randy Ford Taub
Attorney & Counselor at Law
4325 Windsor Centre Trail, Suite 300
Flower Mound, TX 75028-1866


/s/ Stephen W. Davis
STEPHEN W. DAVIS

## INSTRUCTIONS

1.  Pursuant to the Court's attached Order Granting Expedited Discovery, all responses to these requests must be served on or before _____.  In responding to this Request for Production, Plaintiff requests Defendant to serve a written response, along with responsive documents, in accordance with the Court's order granting expedited discovery. Plaintiff further requests Defendant to supplement Defendant's Response by providing additional documents, without the necessity for requests for supplementation, as Defendant or any other person acting on Defendant's behalf may hereafter generate or obtain and/or which augment or otherwise modify the initial responses given to Plaintiff's First Request for Production. Such supplemental responses, if any, together with any additional documents, shall be served upon Plaintiff's attorney immediately after Defendant's receipt or generation of such documents, but in no case later than fourteen (14) days prior to trial.

2.  Answer each request for documents separately by listing the documents and by describing them as defined below.  If documents produced in response to this request are numbered for production, in each response provide both the information that identifies the document and the document's number.

3.  For a document that no longer exists or that cannot be located, identify the document, state how and when it passed out of existence, or when it no longer could be located, and the reasons for the disappearance.  Also, identify each person having knowledge about the disposition or loss of the document, and identify any other document evidencing the lost document's existence or any other facts about the lost document.

4.  When identifying the document, you must state the following

    a.  The nature of the document (e.g. letter, handwritten note).

    b.  The title or heading that appears on the document.

    c.  The date of the document and the date of each addendum, supplement, or other addition or change.

    d.  The identity of author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered.

5.  When identifying the person, you must state the following:

    a.  The full name.

    b.  The present or last known residential address and office telephone number.

    c.  The present or last known office address and office telephone number.

    d.  The present occupation, job title, employer, and employer's address.

## DEFINITIONS

The following definitions shall have the following meanings, unless the context requires otherwise:

1. The singular includes the plural and vice versa. The masculine includes the feminine and neutral genders. The conjunctive ("and") shall include the disjunctive ("or") and vice versa. "Any" shall also mean "all" and vice versa.  The past tense includes the present tense (and vice versa) where the clear meaning is not distorted by change of tense.

2. "Plaintiff" or "Defendant" as well as a party's full or abbreviated name or a pronoun referring to a party's full or abbreviated name or a pronoun referring to a party, means the party, and where applicable, the party's agents representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the party or under the party's control, whether directly or indirectly, including any attorney

3. "Tate" means JAMES DONALD TATE, his successors, predecessors, agents, assigns, employees, representatives, and all other persons acting either directly or indirectly on behalf of JAMES DONALD TATE.

4. "Bettegowda" means MANU BETTEGOWDA, his successors, predecessors, agents, assigns, employees, representatives, and all other persons acting either directly or indirectly on behalf of MANU BETTEGOWDA.

5. "Cuffia" means MICHAEL CUFFIA, his successors, predecessors, agents, assigns, employees, representatives, and all other persons acting either directly or indirectly on behalf of MICHAEL CUFFIA.

6. "Smith" means JEFF SMITH, his successors, predecessors, agents, assigns, employees, representatives, and all other persons acting either directly or indirectly on behalf of JEFF SMITH.

7. "Olympus" means OLYMPUS PARTNERS, LP, is parent entities, agents representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person in concert with the party or under the party's control, whether directly or indirectly, including any attorney.

8. "Pregis" means PREGIS PERFORMANCE PARTNERS, LLC, is parent entities, agents representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the party or under the party's control, whether directly or indirectly, including any attorney.

9. "Person" means any natural person, corporation, firm, association, partnership, joint venture, proprietorship, governmental body, or any other organization, business or legal entity and all predecessors or successor-in-interest.

10. "Relating" or "related" means referring to, having any relationship to, pertaining to, evidencing or constituting evidence of, in whole or in part, the subject matter of this request.

11. "Concerning" means, in whole or in part, directly or indirectly, referring to, relating to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, or constituting.

12. "Communication" means any sending, receipt, or exchange of information or messages regardless of the form or medium used. It includes, without limitation, such things as correspondence, faxes, telexes, telegrams, electronic mail, text messages, telephone calls, voice mail, recorded messages, meetings, nods of the head or other nonverbal signals, conversations, and face-to-face encounters.

13. "Date" means the exact date, month, and year, if ascertainable, or if not, the best available approximation.

14. The word "and" means "and/or".

15. The word "or" means "or/and".

16. "Document" means any printed, written, recorded, or graphic matter of any kind whatsoever, whether on paper, floppy disk, hard disk, computer file, cassette tape, or any other medium.  The term is intended to embrace every conceivable memorialization of any alphabetic characters, images (still or moving), sounds, symbols, figures, dollars, or computations (or any combination of same) and obviously includes, without limitation, such things as correspondence, memorandums, electronic mail, voice mail, answering machine or other recordings, handwritten notes, phone message slips, diagrams, charts, schedules, daily calendars, invoices, purchase orders, forms of any kind, spreadsheets, accounting records, bank statements, canceled checks, check registers, compact disc, DVDs, envelopes, phone bills, faxes, agreement or insurance policy, photographs, slides, sound recordings, videotapes, sketches, internet web-sites, computer programs, tape-recorded telephone conversations, and any thing stored on or accessible with a telecommunications device of any kind, a computer, computing device, or any network.

17. "Possession, custody, or control" of an item means that the person either has physical possession of the item or has a right to possession equal or superior to that of the person who has physical possession of the item.

18. "File" means any collection or group of documents maintained, held, stored, or used together, including, without limitation, all collections of documents maintained, held, or stored in folders, notebooks, or other devices for separating or organizing documents.

19. "Identify" or "describe," when referring to a person, means you must state the following:

     a.  The full name.

     b.  The present or last known residential address and residential telephone number

    c.   The present or last known office address and office telephone number.

    d.   The present occupation, job title, employer, and employer's address at the time of the event or period referred to in each particular request.

    e.   In the case of any entity, identify the officer, employee, or agent most closely connected with the subject matter of the request and identify the officer who is responsible for supervising that officer or employee.

20. "Identify" or "describe," when referring to a document, means you must state the following:

    a.   The nature (e.g., letter, handwritten note) of the document.

    b.   The title or heading that appears on the document.

    c.   The date of the document and the date of each addendum, supplement, or other addition or change.

    d.   The identity of the author and of the signer of the document, and of the person on whose behalf or at whose request or direction the document was prepared or delivered.

    e.   The present location of the document, and the name, address, position or title, and telephone number of the person or persons having custody of the document.

21. "Including" or "includes" means "including, but not limited to" or "includes, but is not limited to."

22. "Relating" or "related" means referring to, having any relationship to, pertaining to, evidencing or constituting evidence of, in whole or in part, the subject matter of this request.

23. "Super Bonus" shall be defined in the same manner as the term is used in the emails attached to Plaintiff's Original Petition as Exhibits 1-6.

## DOCUMENT REQUESTS

**Time Period**:  Unless stated otherwise, each request seeks documents from January 1, 2016 to present.

**REQUEST FOR PRODUCTION NUMBER 1:**  Any and all contracts and/or agreements between Tate, Cuffia, and/or Smith on the one hand and Pregis, Olympus, and/or Bettegowda on the other hand.
   **RESPONSE:**


**REQUEST FOR PRODUCTION NUMBER 2:**   All documents evidencing any communications between Olympus, and any of the following persons or entities: (1) Cuffia, (2) Smith, (3) Tate, (4) Bettegowda, and/or (5) Pregis, including, without limitation, communications related to the payment of any Super Bonus to any party. This request includes, but it not limited to, any and all emails to/from Tate's Rex Performance Products, LLC email account and/or Tate's personal email account: abtate31@yahoo.com; or any and all emails from any personal or professional email account used by Bettegowda, Cuffia, Smith, or any agent, representative, or employee of Pregis or Olympus.
   **RESPONSE:**


**REQUEST FOR PRODUCTION NUMBER 3:** Any and all documents evidencing any money received by Tate, Cuffia, and/or Smith from Pregis, Olympus, Bettegowda or any other parties as a result of the Asset Purchase Agreement between Pregis and Rex Performance Products, LLC.
   **RESPONSE:**


**REQUEST FOR PRODUCTION NUMBER 4:** Any notes, memorandum, diaries, day planners, calendars or other documents kept by Olympus that reflect Olympus' last ninety (90) days, including, but not limited to, documents regarding any meetings, negotiations, and/or communications with or about the following: (1) Cuffia, (2) Smith, (3) Tate, (4) Bettegowda, (5) Pregis, (6) Rex Performance Products, LLC, (7) Rex Hansen, (8) John Ballinger, (9) Robert Story; and/or (10) bonuses paid to Tate, Cuffia, Smith, or any other employee of Rex Performance Products, LLC.
   **RESPONSE:**


**REQUEST FOR PRODUCTION NUMBER 5:** Documents relating or referring to the terms or conditions of your relationship with Bettegowda and/or Pregis, including, without limitation, contracts, agreements, operating agreements, partnership agreements, joint venture agreements, promissory notes, financing agreements, resolutions, and any benefits or compensation provided or offered by Pregis, Bettegowda, and/or Olympus specifically related to the asset purchase agreement between Rex Performance Products, LLC and Pregis or compensation or bonuses provided to any employees, officers, or members of Rex Performance Products, LLC.
   **RESPONSE:**

**REQUEST FOR PRODUCTION NUMBER 6:** All documents relating to any communications, correspondence, or agreements between any agent, servant, partner of either Olympus or Pregis and any former or current employee(s) of Rex Performance Products, LLC, including, but not limited to, Tate, Cuffia, or Smith.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NUMBER 7:** All documents relating to any communications, correspondence, or agreements between Olympus and any agent, employee, officer, representative, servant, and/or member of Pregis, Tate, Cuffia, and/or Smith related to and including, but not limited to, (1) Rex Performance Products, LLC, (2) the asset purchase agreement between Pregis and Rex Performance Products, LLC, (3) Tate, (4) Cuffia, (5) Smith, (6) Bettegowda, (7) retention of any employees, officers, or directors of Rex Performance Productions, LLC after acquisition by Pregis, and/or (8) any compensation of any kind paid to Tate, Cuffia, Smith, Bettegowda, or any employee of Rex Performance Products, LLC.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NUMBER 8:** All communications between or among the Defendants since November, 2017 relating to or concerning Rex Performance Products, LLC, and any Super Bonus to be paid by and among the Defendants.

> **RESPONSE:**

**REQUEST FOR PRODUCTION NUMBER 9:** All documents evidencing any communications between Pregis, Olympus, Bettegowda, Tate, Cuffia, and/or Smith, and any of the following persons or entities: (1) Nilesh Amrutiya; (2) Ryan Bigler; (3) Corey Bisnett; (4) Lisa Bonner; (5) Dave Herschelman; (6) Matthew Robinet; (7) Collin; and (8) Chip as listed in Exhibit 7 attached to Plaintiff's Original Petition, including, without limitation, communications related to the payment of any Bonus. This request includes, but is not limited to, any and all emails to Tate at his Rex Performance Products, LLC email and Tate's personal email account abtate31@yahoo.com and any professional or personal email accounts used by any of the other named persons included in this request.

> **RESPONSE:**

**EXHIBIT "B"**

**Temporary Restraining Orders issued on 02/26/2018**

# THE STATE OF TEXAS
## DISTRICT COURT, TARRANT COUNTY          **ORIGINAL**

---

*TEMPORARY RESTRAINING ORDER*   Cause No. 141-298129-18

REX PERFORMANCE PRODUCTS, LLC          VS.     JAMES DONALD TATE, ET AL

TO: JAMES DONALD TATE

1406 DIAR LN

KELLER, TX 76248

GREETINGS:

Whereas, REX PERFORMANCE PRODUCTS, LLC filed a PETITION in the 141st District Court of Tarrant County,

on the 26th day of February, 2018, in a suit numbered 141-298129-18 on the docket of said Court wherein
REX PERFORMANCE PRODUCTS LLC is Plaintiff

and JAMES DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS LLC, OLYMPUS PARTNERS LP are Defendants

Alleging application for temporary restraining AS SET FORTH IN A COPY OF ORDER FOR ISSUANCE OF TEMPORARY RESTRAINING
ORDER AND ORDER SETTING HEARING DATE

And whereas, the Hon. _____DAVID EVANS Presiding,_____ Judge of the 141st District Court of Tarrant County, Texas,
upon presentation of said PETITION to him made the attaching order hereto:

And whereas, the said REX PERFORMANCE PRODUCTS, LLC , as principal
has executed and filed with the clerk of said Court a cash in lieu of injunction bond which has been approved in the
sum of  $20000.00 , made payable and conditioned as required by law.
    You are therefore temporarily restrained and enjoined as set forth in Judge's order attached hereto

    You are further ordered to appear before the said court at **10:30 o'clock AM on the 9th  day of   March,  2018**, in the
141st District Court of Tarrant County, Texas, when and where you will appear to show cause why said temporary injunction
should not be granted effective until final judgment herein.
_____Thomas A. Wilder_____, Clerk of the District Court of Tarrant County, Texas. Issued under my hand and the
seal of said Court, at office in the City of Fort Worth, this the  27th day of February, 2018.

By   *Anthony Ferrara*
ANTHONY FERRARA

NOTICE: DARRELL W COOK
    Attorney for REX PERFORMANCE PRODUCTS LLC Phone No. (214)368-4686
    Address    6688 N CENTRAL EXPRESSWAY STE 1000 DALLAS, TX 75206

THE STATE OF TEXAS                                                    **SERVICE COPY**
DISTRICT COURT, TARRANT COUNTY

*TEMPORARY RESTRAINING ORDER*   *Cause No. 141-298129-18*

REX PERFORMANCE PRODUCTS, LLC              VS.     JAMES DONALD TATE, ET AL

TO: JAMES DONALD TATE

                                 1406 DIAR LN

                                 KELLER, TX 76248

GREETINGS:


Whereas, REX PERFORMANCE PRODUCTS, LLC filed a PETITION in the 141st District Court of Tarrant County,

on the 26th day of February,  2018, in a suit numbered 141-298129-18 on the docket of said Court wherein
REX PERFORMANCE PRODUCTS LLC is Plaintiff

and JAMES DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS LLC, OLYMPUS PARTNERS LP are Defendants

Alleging application for temporary restraining AS SET FORTH IN A COPY OF ORDER FOR ISSUANCE OF TEMPORARY RESTRAINING
ORDER AND ORDER SETTING HEARING DATE

And whereas, the Hon. _____DAVID EVANS Presiding,_____ Judge of the 141st District Court of Tarrant County, Texas,
upon presentation of said PETITION to him made the attaching order hereto:
_____

And whereas, the said REX PERFORMANCE PRODUCTS, LLC , as principal
has executed and filed with the clerk of said Court a cash in lieu of injunction bond which has been approved in the
sum of   $20000.00 , made payable and conditioned as required by law.
   You are therefore temporarily restrained and enjoined as set forth in Judge's order attached hereto


   You are further ordered to appear before the said court at **10:30 o'clock AM on the 9th  day of   March,  2018,**  in the
141st District Court of Tarrant County, Texas, when and where you will appear to show cause why said temporary injunction
should not be granted effective until final judgment herein.
_____Thomas A. Wilder_____, Clerk of the District Court of Tarrant County, Texas. Issued under my hand and the
seal of said Court, at office in the City of Fort Worth, this the  27th day of February, 2018.


                                      By _____*Anthony Ferrara*_____
                                                 ANTHONY FERRARA

NOTICE: DARRELL W COOK
        Attorney for REX PERFORMANCE PRODUCTS LLC Phone No. (214)368-4686
        Address    6688 N CENTRAL EXPRESSWAY STE 1000 DALLAS, TX 75206

FILED
TARRANT COUNTY
2/26/2018 9:56 AM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. _____**141-298129-18**_____

| | | |
|---|---|---|
| **REX PERFORMANCE PRODUCTS, LLC,** | § | **IN THE DISTRICT COURT** |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | 141st **JUDICIAL DISTRICT** |
| **JAMES DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS, LLC, and OLYMPUS PARTNERS, L.P.,** | § | |
| *Defendants.* | § | **TARRANT COUNTY, TEXAS** |

## ORDER FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND ORDER SETTING HEARING DATE

REX PERFORMANCE PRODUCTS, LLC, Plaintiff in this cause has filed an Application for Temporary Restraining Order, for Temporary Injunctive Relief and for Permanent Injunctive Relief, supported by Affidavits/Declarations and evidence attached to the Application, in connection therewith, and has presented a request for Temporary Restraining Order as set forth in the Application. It clearly appears from the facts set forth in its Application and Exhibits that unless JAMES DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS, LLC and OLYMPUS PARTNERS, L.P., Defendants are immediately restrained from in the following ways:

    a. That Defendant JAMES DONALD TATE or any agent, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under his control or direction, be immediately restrained and enjoined from receiving, dispersing, transferring, depositing, cashing, or otherwise dissipating any "Super Bonus" or other compensation outside of Defendant's normal salary received from Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA, or any other agent, representative,


E-MAILED
2.27.18

TEMPORARY RESTRAINING ORDER                                         PAGE | 1

Registry Notified

subsidiary, employee, servant, officer, relative, assignee or other person acting directly or indirectly under the control of said Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA;

b. That Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA or any agent, subsidiary, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under their control or direction, be immediately restrained and enjoined from paying, transferring, depositing, conveying, or otherwise delivering payment of any "Super Bonus" or other compensation outside of Defendant's normal salary received from Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA, or any other agent, representative, subsidiary, employee, servant, officer, relative, assignee or other person acting directly or indirectly under the control of said Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA so as to maintain the status quo;

c. That the Defendants JAMES DONALD TATE, PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA or any agent, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under their control or direction, be further immediately restrained and enjoined from disposing of any property in their possession that belongs to Plaintiff or which contains evidence of Defendants' bad acts, including, but not limited to, personal or work emails that are now or have ever been on their business premises or homes, files, electronic media, text messages between any of the

Defendants, computers, or voicemails from any Defendant or agent or representative
of any Defendant;

Plaintiff will suffer irreparable injury because the actions of Defendants will cause
immediate and irreparable harm to Plaintiffs right to recover relief in this cause. It is apparent
that Defendants cannot respond in damages.

It is therefore, Ordered, that Defendants are immediately restrained in the following
ways:

a. That Defendant JAMES DONALD TATE or any agent, employee, servant, officer,
representative, relative, assignee, or other person acting directly or indirectly under
his control or direction, be immediately restrained and enjoined from receiving,
dispersing, transferring, depositing, cashing, or otherwise dissipating any "Super
Bonus" or other compensation outside of Defendant's normal salary received from
Defendants    PREGIS    PERFORMANCE    PRODUCTS,    LLC,    OLYMPUS
PARTNERS, L.P.,  MANU BETTEGOWDA, or any other agent, representative,
subsidiary, employee, servant, officer, relative, assignee or other person acting
directly or indirectly under the control of said Defendants PREGIS PERFORMANCE
PRODUCTS, LLC, OLYMPUS PARTNERS, L.P.,  MANU BETTEGOWDA;

b. That Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS
PARTNERS, L.P.,  MANU BETTEGOWDA or any agent, subsidiary, employee,
servant, officer, representative, relative, assignee, or other person acting directly or
indirectly under their control or direction, be immediately restrained and enjoined
from paying, transferring, depositing, conveying, or otherwise delivering payment of
any "Super Bonus" or other compensation outside of Defendant's normal salary

received from Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA, or any other agent, representative, subsidiary, employee, servant, officer, relative, assignee or other person acting directly or indirectly under the control of said Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA so as to maintain the status quo;

c. That the Defendants JAMES DONALD TATE, PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA or any agent, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under their control or direction, be further immediately restrained and enjoined from disposing of any property in their possession that belongs to Plaintiff or which contains evidence of Defendants' bad acts, including, but not limited to, personal or work emails that are now or have ever been on their business premises or homes, files, electronic media, text messages between any of the Defendants, computers, or voicemails from any Defendant or agent or representative of any Defendant;

by order of this Court.

Service of a copy of this Order on any other individual, whether or not named in this Order, but being acting directly or indirectly in concert with the above-named JAMES DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS, LLC and OLYMPUS PARTNERS, L.P., Defendants, shall be treated the same as if having received a notice and restraint from the Court and held subject to the jurisdiction of this Court by reason or violation of any provision herein. This notice may be served upon the party either by a copy of

this Order, but the party so affected by this restraint may be held responsible if it is determined that the respective party against whom liability is sought is determined to have had actual notice of the contents of this Order, whether or not actually served.

The Clerk of the above-numbered Court shall forthwith, on the filing by the Plaintiff REX PERFORMANCE PRODUCTS, LLC of the deposit in lieu of bond, if hereinafter required, and on approving the same according to the law, issue a temporary restraining order in conformity with the law and the terms of this Order.

This Order shall not be effective unless and until the Plaintiff REX PERFORMANCE PRODUCTS, LLC deposits into the registry of this Court and files with the Clerk the sum of 20,000⁰⁰ —It is further ordered that this cash in deposit in lieu of bond may be made by Plaintiff REX PERFORMANCE PRODUCTS, LLC by check drawn upon the operating account of Darrell W. Cook & Associates, A Professional Corporation.

It is further ORDERED that Plaintiff's Application for Temporary Injunction, as contained in such pleading, be heard before this Court at 10:30 o'clock, A .m. on the 9th day of March , 2018, in the Courtroom of the 141st Judicial District Court, Tarrant County, Texas.

It is further ORDERED that the Clerk of this Court issue notice for service on JAMES DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS, LLC and OLYMPUS PARTNERS, L.P., Defendants, notifying them of the time and place of the hearing above described, and commanding them to appear and show cause why the temporary injunction prayed for in the Plaintiff's Application should not be granted.

Signed this 16th day of February 2017 at 4:15 o'clock, P.m.

_____
JUDGE PRESIDING

THE STATE OF TEXAS                                    **ORIGINAL**
DISTRICT COURT, TARRANT COUNTY

*TEMPORARY RESTRAINING ORDER*   *Cause No. 141-298129-18*

REX PERFORMANCE PRODUCTS, LLC          VS.    JAMES DONALD TATE, ET AL

TO: MANU BETTEGOWDA

67 E MEADOW RD

WILTON, CT 06897

GREETINGS:

Whereas, REX PERFORMANCE PRODUCTS, LLC filed a PETITION in the 141st District Court of Tarrant County,

on the 26th day of February, 2018, in a suit numbered 141-298129-18 on the docket of said Court wherein
REX PERFORMANCE PRODUCTS LLC is Plaintiff

and JAMES DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS LLC, OLYMPUS PARTNERS LP are Defendants

Alleging application for temporary restraining AS SET FORTH IN A COPY OF ORDER FOR ISSUANCE OF TEMPORARY RESTRAINING
ORDER AND ORDER SETTING HEARING DATE

And whereas, the Hon. _____ DAVID EVANS Presiding, _____ Judge of the 141st District Court of Tarrant County, Texas,
upon presentation of said PETITION to him made the attaching order hereto:

And whereas, the said REX PERFORMANCE PRODUCTS, LLC , as principal
has executed and filed with the clerk of said Court a cash in lieu of injunction bond which has been approved in the
sum of  $20000.00 , made payable and conditioned as required by law.
    You are therefore temporarily restrained and enjoined as set forth in Judge's order attached hereto

    You are further ordered to appear before the said court at **10:30 o'clock AM on the 9th  day of   March, 2018,**  in the
141st District Court of Tarrant County, Texas, when and where you will appear to show cause why said temporary injunction
should not be granted effective until final judgment herein.
    _____ Thomas A. Wilder _____ , Clerk of the District Court of Tarrant County, Texas. Issued under my hand and the
seal of said Court, at office in the City of Fort Worth, this the  27th day of February, 2018.

By *Anthony Ferrara*
ANTHONY FERRARA

NOTICE: DARRELL W COOK
      Attorney for REX PERFORMANCE PRODUCTS LLC Phone No. (214)368-4686
      Address    6688 N CENTRAL EXPRESSWAY STE 1000 DALLAS, TX 75206

THE STATE OF TEXAS                                     **SERVICE COPY**
DISTRICT COURT, TARRANT COUNTY

*TEMPORARY RESTRAINING ORDER*  Cause No. 141-298129-18

REX PERFORMANCE PRODUCTS, LLC          VS.     JAMES DONALD TATE, ET AL

TO: MANU BETTEGOWDA

                              67 E MEADOW RD

                              WILTON, CT 06897

GREETINGS:

Whereas, REX PERFORMANCE PRODUCTS, LLC filed a PETITION in the 141st District Court of Tarrant County,

on the 26th day of February, 2018, in a suit numbered 141-298129-18 on the docket of said Court wherein
REX PERFORMANCE PRODUCTS LLC is Plaintiff

and JAMES DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS LLC, OLYMPUS PARTNERS LP are Defendants

Alleging application for temporary restraining AS SET FORTH IN A COPY OF ORDER FOR ISSUANCE OF TEMPORARY RESTRAINING
ORDER AND ORDER SETTING HEARING DATE

And whereas, the Hon. _____ DAVID EVANS Presiding, _____ Judge of the 141st District Court of Tarrant County, Texas,
upon presentation of said PETITION to him made the attaching order hereto:

And whereas, the said REX PERFORMANCE PRODUCTS, LLC , as principal
has executed and filed with the clerk of said Court a cash in lieu of injunction bond which has been approved in the
sum of   $20000.00 , made payable and conditioned as required by law.
   You are therefore temporarily restrained and enjoined as set forth in Judge's order attached hereto

   You are further ordered to appear before the said court at **10:30 o'clock AM on the 9th  day of   March, 2018,** in the
141st District Court of Tarrant County, Texas, when and where you will appear to show cause why said temporary injunction
should not be granted effective until final judgment herein.
_____ Thomas A. Wilder _____, Clerk of the District Court of Tarrant County, Texas. Issued under my hand and the
seal of said Court, at office in the City of Fort Worth, this the  27th day of February, 2018.

                              By   *Anthony Ferrara*
                                      ANTHONY FERRARA

NOTICE: DARRELL W COOK
        Attorney for REX PERFORMANCE PRODUCTS LLC Phone No. (214)368-4686
        Address   6688 N CENTRAL EXPRESSWAY STE 1000 DALLAS, TX 75206

FILED
TARRANT COUNTY
2/26/2018 9:56 AM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. _____ **141-298129-18**

| | | |
|---|---|---|
| **REX PERFORMANCE PRODUCTS, LLC,** | § | **IN THE DISTRICT COURT** |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | **141st JUDICIAL DISTRICT** |
| **JAMES DONALD TATE, MANU** | § | |
| **BETTEGOWDA, PREGIS** | § | |
| **PERFORMANCE PRODUCTS, LLC,** | § | |
| **and OLYMPUS PARTNERS, L.P.,** | § | |
| *Defendants.* | § | **TARRANT COUNTY, TEXAS** |

## ORDER FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER
## AND ORDER SETTING HEARING DATE

REX PERFORMANCE PRODUCTS, LLC, Plaintiff in this cause has filed an Application for Temporary Restraining Order, for Temporary Injunctive Relief and for Permanent Injunctive Relief, supported by Affidavits/Declarations and evidence attached to the Application, in connection therewith, and has presented a request for Temporary Restraining Order as set forth in the Application. It clearly appears from the facts set forth in its Application and Exhibits that unless JAMES DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS, LLC and OLYMPUS PARTNERS, L.P., Defendants are immediately restrained from in the following ways:

a. That Defendant JAMES DONALD TATE or any agent, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under his control or direction, be immediately restrained and enjoined from receiving, dispersing, transferring, depositing, cashing, or otherwise dissipating any "Super Bonus" or other compensation outside of Defendant's normal salary received from Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA, or any other agent, representative,

E-MAILED
2.27.18 aj

TEMPORARY RESTRAINING ORDER                                                                 PAGE | 1


Registry Notified

subsidiary, employee, servant, officer, relative, assignee or other person acting directly or indirectly under the control of said Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA;

b. That Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA or any agent, subsidiary, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under their control or direction, be immediately restrained and enjoined from paying, transferring, depositing, conveying, or otherwise delivering payment of any "Super Bonus" or other compensation outside of Defendant's normal salary received from Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA, or any other agent, representative, subsidiary, employee, servant, officer, relative, assignee or other person acting directly or indirectly under the control of said Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA so as to maintain the status quo;

c. That the Defendants JAMES DONALD TATE, PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA or any agent, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under their control or direction, be further immediately restrained and enjoined from disposing of any property in their possession that belongs to Plaintiff or which contains evidence of Defendants' bad acts, including, but not limited to, personal or work emails that are now or have ever been on their business premises or homes, files, electronic media, text messages between any of the

Defendants, computers, or voicemails from any Defendant or agent or representative of any Defendant;

Plaintiff will suffer irreparable injury because the actions of Defendants will cause immediate and irreparable harm to Plaintiffs right to recover relief in this cause. It is apparent that Defendants cannot respond in damages.

It is therefore, Ordered, that Defendants are immediately restrained in the following ways:

a. That Defendant JAMES DONALD TATE or any agent, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under his control or direction, be immediately restrained and enjoined from receiving, dispersing, transferring, depositing, cashing, or otherwise dissipating any "Super Bonus" or other compensation outside of Defendant's normal salary received from Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA, or any other agent, representative, subsidiary, employee, servant, officer, relative, assignee or other person acting directly or indirectly under the control of said Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA;

b. That Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA or any agent, subsidiary, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under their control or direction, be immediately restrained and enjoined from paying, transferring, depositing, conveying, or otherwise delivering payment of any "Super Bonus" or other compensation outside of Defendant's normal salary

received from Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA, or any other agent, representative, subsidiary, employee, servant, officer, relative, assignee or other person acting directly or indirectly under the control of said Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA so as to maintain the status quo;

c. That the Defendants JAMES DONALD TATE, PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA or any agent, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under their control or direction, be further immediately restrained and enjoined from disposing of any property in their possession that belongs to Plaintiff or which contains evidence of Defendants' bad acts, including, but not limited to, personal or work emails that are now or have ever been on their business premises or homes, files, electronic media, text messages between any of the Defendants, computers, or voicemails from any Defendant or agent or representative of any Defendant;

by order of this Court.

Service of a copy of this Order on any other individual, whether or not named in this Order, but being acting directly or indirectly in concert with the above-named JAMES DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS, LLC and OLYMPUS PARTNERS, L.P., Defendants, shall be treated the same as if having received a notice and restraint from the Court and held subject to the jurisdiction of this Court by reason or violation of any provision herein. This notice may be served upon the party either by a copy of

this Order, but the party so affected by this restraint may be held responsible if it is determined that the respective party against whom liability is sought is determined to have had actual notice of the contents of this Order, whether or not actually served.

The Clerk of the above-numbered Court shall forthwith, on the filing by the Plaintiff REX PERFORMANCE PRODUCTS, LLC of the deposit in lieu of bond, if hereinafter required, and on approving the same according to the law, issue a temporary restraining order in conformity with the law and the terms of this Order.

This Order shall not be effective unless and until the Plaintiff REX PERFORMANCE PRODUCTS, LLC deposits into the registry of this Court and files with the Clerk the sum of 20,000⁰⁰ It is further ordered that this cash in deposit in lieu of bond may be made by Plaintiff REX PERFORMANCE PRODUCTS, LLC by check drawn upon the operating account of Darrell W. Cook & Associates, A Professional Corporation.

It is further ORDERED that Plaintiff's Application for Temporary Injunction, as contained in such pleading, be heard before this Court at 10:30 o'clock, a .m. on the 9th day of March , 2018, in the Courtroom of the 141st Judicial District Court, Tarrant County, Texas.

It is further ORDERED that the Clerk of this Court issue notice for service on JAMES DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS, LLC and OLYMPUS PARTNERS, L.P., Defendants, notifying them of the time and place of the hearing above described, and commanding them to appear and show cause why the temporary injunction prayed for in the Plaintiff's Application should not be granted.

Signed this _26th_ day of _February_ 2017 at _4:15_ o'clock, _P_.m.

_____
JUDGE PRESIDING

THE STATE OF TEXAS                                        **ORIGINAL**
DISTRICT COURT, TARRANT COUNTY

════════════════════════════════════════════════════════════════════

*TEMPORARY RESTRAINING ORDER*   *Cause No. 141-298129-18*

REX PERFORMANCE PRODUCTS, LLC          VS.     JAMES DONALD TATE, ET AL

TO: PREGIS PERFORMANCE PRODUCTS LLC

                          B/S REG AGT-THE CORPORATION TRUST COMPANY
                          1209 ORANGE ST
                          WILMINGTON, DE 19801

GREETINGS:


Whereas, REX PERFORMANCE PRODUCTS, LLC filed a PETITION in the 141st District Court of Tarrant County,

on the 26th day of February,  2018, in a suit numbered 141-298129-18 on the docket of said Court wherein
REX PERFORMANCE PRODUCTS LLC is Plaintiff

and JAMES DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS LLC, OLYMPUS PARTNERS LP are Defendants

Alleging application for temporary restraining AS SET FORTH IN A COPY OF ORDER FOR ISSUANCE OF TEMPORARY RESTRAINING
ORDER AND ORDER SETTING HEARING DATE

And whereas, the Hon. _____ DAVID EVANS Presiding, _____ Judge of the 141st District Court of Tarrant County, Texas,
upon presentation of said PETITION to him made the attaching order hereto:

────────────────────────────────────────────────────────────────────

And whereas, the said REX PERFORMANCE PRODUCTS, LLC , as principal
has executed and filed with the clerk of said Court a cash in lieu of injunction bond which has been approved in the
sum of   $20000.00 , made payable and conditioned as required by law.
    You are therefore temporarily restrained and enjoined as set forth in Judge's order attached hereto

    You are further ordered to appear before the said court at  **10:30 o'clock AM on the 9th  day of    March,  2018,**  in the
141st District Court of Tarrant County, Texas, when and where you will appear to show cause why said temporary injunction
should not be granted effective until final judgment herein.

    _____ Thomas A. Wilder _____, Clerk of the District Court of Tarrant County, Texas. Issued under my hand and the
seal of said Court, at office in the City of Fort Worth, this the  27th day of February, 2018.


                          By  *Anthony Ferrara*
                              ANTHONY FERRARA

NOTICE: DARRELL W COOK
        Attorney for REX PERFORMANCE PRODUCTS LLC Phone No. (214)368-4686
        Address    6688 N CENTRAL EXPRESSWAY STE 1000 DALLAS, TX 75206

THE STATE OF TEXAS

DISTRICT COURT, TARRANT COUNTY

SERVICE COPY

*TEMPORARY RESTRAINING ORDER*   *Cause No. 141-298129-18*

REX PERFORMANCE PRODUCTS, LLC          VS.     JAMES DONALD TATE, ET AL

TO: PREGIS PERFORMANCE PRODUCTS LLC

                              B/S REG AGT-THE CORPORATION TRUST COMPANY
                              1209 ORANGE ST
                              WILMINGTON, DE 19801

GREETINGS:


Whereas, REX PERFORMANCE PRODUCTS, LLC filed a PETITION in the 141st District Court of Tarrant County,

on the 26th day of February,  2018, in a suit numbered 141-298129-18 on the docket of said Court wherein
REX PERFORMANCE PRODUCTS LLC is Plaintiff

and JAMES DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS LLC, OLYMPUS PARTNERS LP are Defendants

Alleging application for temporary restraining AS SET FORTH IN A COPY OF ORDER FOR ISSUANCE OF TEMPORARY RESTRAINING
ORDER AND ORDER SETTING HEARING DATE

And whereas, the Hon. _____DAVID EVANS Presiding,_____ Judge of the 141st District Court of Tarrant County, Texas,
upon presentation of said PETITION to him made the attaching order hereto:


And whereas, the said REX PERFORMANCE PRODUCTS, LLC , as principal
has executed and filed with the clerk of said Court a cash in lieu of injunction bond which has been approved in the
sum of   $20000.00 , made payable and conditioned as required by law.
   You are therefore temporarily restrained and enjoined as set forth in Judge's order attached hereto


   You are further ordered to appear before the said court at **10:30 o'clock AM on the 9th  day of   March, 2018,**  in the
141st District Court of Tarrant County, Texas, when and where you will appear to show cause why said temporary injunction
should not be granted effective until final judgment herein.
   _____Thomas A. Wilder_____, Clerk of the District Court of Tarrant County, Texas. Issued under my hand and the
seal of said Court, at office in the City of Fort Worth, this the  27th day of February, 2018.

                              By   *Anthony Ferrara*
                                   ANTHONY FERRARA

NOTICE: DARRELL W COOK
        Attorney for REX PERFORMANCE PRODUCTS LLC Phone No. (214)368-4686
        Address   6688 N CENTRAL EXPRESSWAY STE 1000 DALLAS, TX 75206

FILED
TARRANT COUNTY
2/26/2018 9:56 AM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. _____ 141-298129-18

| | | |
|---|---|---|
| REX PERFORMANCE PRODUCTS, LLC, | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | |
| | § | 141st JUDICIAL DISTRICT |
| JAMES DONALD TATE, MANU | § | |
| BETTEGOWDA, PREGIS | § | |
| PERFORMANCE PRODUCTS, LLC, | § | |
| and OLYMPUS PARTNERS, L.P., | § | |
| *Defendants.* | § | TARRANT COUNTY, TEXAS |

## ORDER FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER
### AND ORDER SETTING HEARING DATE

REX PERFORMANCE PRODUCTS, LLC, Plaintiff in this cause has filed an Application for Temporary Restraining Order, for Temporary Injunctive Relief and for Permanent Injunctive Relief, supported by Affidavits/Declarations and evidence attached to the Application, in connection therewith, and has presented a request for Temporary Restraining Order as set forth in the Application. It clearly appears from the facts set forth in its Application and Exhibits that unless JAMES DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS, LLC and OLYMPUS PARTNERS, L.P., Defendants are immediately restrained from in the following ways:

a. That Defendant JAMES DONALD TATE or any agent, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under his control or direction, be immediately restrained and enjoined from receiving, dispersing, transferring, depositing, cashing, or otherwise dissipating any "Super Bonus" or other compensation outside of Defendant's normal salary received from Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA, or any other agent, representative,



E-MAILED
2.27.18 ajl

TEMPORARY RESTRAINING ORDER

PAGE | 1



subsidiary, employee, servant, officer, relative, assignee or other person acting directly or indirectly under the control of said Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA;

b. That Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA or any agent, subsidiary, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under their control or direction, be immediately restrained and enjoined from paying, transferring, depositing, conveying, or otherwise delivering payment of any "Super Bonus" or other compensation outside of Defendant's normal salary received from Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA, or any other agent, representative, subsidiary, employee, servant, officer, relative, assignee or other person acting directly or indirectly under the control of said Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA so as to maintain the status quo;

c. That the Defendants JAMES DONALD TATE, PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA or any agent, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under their control or direction, be further immediately restrained and enjoined from disposing of any property in their possession that belongs to Plaintiff or which contains evidence of Defendants' bad acts, including, but not limited to, personal or work emails that are now or have ever been on their business premises or homes, files, electronic media, text messages between any of the

Defendants, computers, or voicemails from any Defendant or agent or representative of any Defendant;

Plaintiff will suffer irreparable injury because the actions of Defendants will cause immediate and irreparable harm to Plaintiffs right to recover relief in this cause. It is apparent that Defendants cannot respond in damages.

It is therefore, Ordered, that Defendants are immediately restrained in the following ways:

a. That Defendant JAMES DONALD TATE or any agent, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under his control or direction, be immediately restrained and enjoined from receiving, dispersing, transferring, depositing, cashing, or otherwise dissipating any "Super Bonus" or other compensation outside of Defendant's normal salary received from Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA, or any other agent, representative, subsidiary, employee, servant, officer, relative, assignee or other person acting directly or indirectly under the control of said Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA;

b. That Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA or any agent, subsidiary, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under their control or direction, be immediately restrained and enjoined from paying, transferring, depositing, conveying, or otherwise delivering payment of any "Super Bonus" or other compensation outside of Defendant's normal salary

received from Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA, or any other agent, representative, subsidiary, employee, servant, officer, relative, assignee or other person acting directly or indirectly under the control of said Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA so as to maintain the status quo;

c. That the Defendants JAMES DONALD TATE, PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA or any agent, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under their control or direction, be further immediately restrained and enjoined from disposing of any property in their possession that belongs to Plaintiff or which contains evidence of Defendants' bad acts, including, but not limited to, personal or work emails that are now or have ever been on their business premises or homes, files, electronic media, text messages between any of the Defendants, computers, or voicemails from any Defendant or agent or representative of any Defendant;

by order of this Court.

Service of a copy of this Order on any other individual, whether or not named in this Order, but being acting directly or indirectly in concert with the above-named JAMES DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS, LLC and OLYMPUS PARTNERS, L.P., Defendants, shall be treated the same as if having received a notice and restraint from the Court and held subject to the jurisdiction of this Court by reason or violation of any provision herein. This notice may be served upon the party either by a copy of

this Order, but the party so affected by this restraint may be held responsible if it is determined that the respective party against whom liability is sought is determined to have had actual notice of the contents of this Order, whether or not actually served.

The Clerk of the above-numbered Court shall forthwith, on the filing by the Plaintiff REX PERFORMANCE PRODUCTS, LLC of the deposit in lieu of bond, if hereinafter required, and on approving the same according to the law, issue a temporary restraining order in conformity with the law and the terms of this Order.

This Order shall not be effective unless and until the Plaintiff REX PERFORMANCE PRODUCTS, LLC deposits into the registry of this Court and files with the Clerk the sum of 20,000.00 It is further ordered that this cash in deposit in lieu of bond may be made by Plaintiff REX PERFORMANCE PRODUCTS, LLC by check drawn upon the operating account of Darrell W. Cook & Associates, A Professional Corporation.

It is further ORDERED that Plaintiff's Application for Temporary Injunction, as contained in such pleading, be heard before this Court at 10:30 o'clock, a.m. on the 9th day of March, 2018, in the Courtroom of the 141st Judicial District Court, Tarrant County, Texas.

It is further ORDERED that the Clerk of this Court issue notice for service on JAMES DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS, LLC and OLYMPUS PARTNERS, L.P., Defendants, notifying them of the time and place of the hearing above described, and commanding them to appear and show cause why the temporary injunction prayed for in the Plaintiff's Application should not be granted.

Signed this 26th day of February 2017 at 4:15 o'clock, P.m.

_____
JUDGE PRESIDING

THE STATE OF TEXAS                          **ORIGINAL**
DISTRICT COURT, TARRANT COUNTY

*TEMPORARY RESTRAINING ORDER*   *Cause No. 141-298129-18*

REX PERFORMANCE PRODUCTS, LLC          VS.      JAMES DONALD TATE, ET AL

TO: OLYMPUS PARTNERS LP

                            B/S PARTNER-MANU BETTEGOWDA
                            ONE STATION PLACE 4TH FL
                            STAMFORD, CT 06902

GREETINGS:

Whereas, REX PERFORMANCE PRODUCTS, LLC filed a PETITION in the 141st District Court of Tarrant County,

on the 26th day of February,  2018, in a suit numbered 141-298129-18 on the docket of said Court wherein
REX PERFORMANCE PRODUCTS LLC is Plaintiff

and JAMES DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS LLC, OLYMPUS PARTNERS LP are Defendants

Alleging application for temporary restraining AS SET FORTH IN A COPY OF ORDER FOR ISSUANCE OF TEMPORARY RESTRAINING
ORDER AND ORDER SETTING HEARING DATE

And whereas, the Hon.    _____DAVID EVANS Presiding,_____    Judge of the 141st District Court of Tarrant County, Texas,
upon presentation of said PETITION to him made the attaching order hereto:

And whereas, the said REX PERFORMANCE PRODUCTS, LLC , as principal
has executed and filed with the clerk of said Court a cash in lieu of injunction bond which has been approved in the
sum of   $20000.00 , made payable and conditioned as required by law.
  You are therefore temporarily restrained and enjoined as set forth in Judge's order attached hereto

  You are further ordered to appear before the said court at  **10:30 o'clock AM on the 9th  day of   March,  2018,**  in the
141st District Court of Tarrant County, Texas, when and where you will appear to show cause why said temporary injunction
should not be granted effective until final judgment herein.
  _____Thomas A. Wilder_____ , Clerk of the District Court of Tarrant County, Texas. Issued under my hand and the
seal of said Court, at office in the City of Fort Worth, this the  27th day of February, 2018.

                        By  *Anthony Ferrara*
                              ANTHONY FERRARA

NOTICE: DARRELL W COOK
        Attorney for REX PERFORMANCE PRODUCTS LLC Phone No. (214)368-4686
        Address   6688 N CENTRAL EXPRESSWAY STE 1000 DALLAS, TX 75206

THE STATE OF TEXAS                                        **SERVICE COPY**
DISTRICT COURT, TARRANT COUNTY

*TEMPORARY RESTRAINING ORDER*   *Cause No. 141-298129-18*

REX PERFORMANCE PRODUCTS, LLC        VS.    JAMES DONALD TATE, ET AL

TO: OLYMPUS PARTNERS LP

                                    B/S PARTNER-MANU BETTEGOWDA
                                    ONE STATION PLACE 4TH FL
                                    STAMFORD, CT 06902

GREETINGS:


Whereas, REX PERFORMANCE PRODUCTS, LLC filed a PETITION in the 141st District Court of Tarrant County,

on the 26th day of February,  2018, in a suit numbered 141-298129-18 on the docket of said Court wherein
REX PERFORMANCE PRODUCTS LLC is Plaintiff

and JAMES DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS LLC, OLYMPUS PARTNERS LP are Defendants

Alleging application for temporary restraining AS SET FORTH IN A COPY OF ORDER FOR ISSUANCE OF TEMPORARY RESTRAINING
ORDER AND ORDER SETTING HEARING DATE

And whereas, the Hon. _____DAVID EVANS Presiding,_____ Judge of the 141st District Court of Tarrant County, Texas,
upon presentation of said PETITION to him made the attaching order hereto:

And whereas, the said REX PERFORMANCE PRODUCTS, LLC , as principal
has executed and filed with the clerk of said Court a cash in lieu of injunction bond which has been approved in the
sum of   $20000.00 , made payable and conditioned as required by law.
    You are therefore temporarily restrained and enjoined as set forth in Judge's order attached hereto

    You are further ordered to appear before the said court at **10:30 o'clock AM on the 9th  day of   March,  2018,** in the
141st District Court of Tarrant County, Texas, when and where you will appear to show cause why said temporary injunction
should not be granted effective until final judgment herein.
    _____Thomas A. Wilder_____ , Clerk of the District Court of Tarrant County, Texas. Issued under my hand and the
seal of said Court, at office in the City of Fort Worth, this the  27th day of February, 2018.

                            By  *Anthony Ferrara*
                                    ANTHONY  FERRARA

NOTICE: DARRELL W COOK
        Attorney for REX PERFORMANCE PRODUCTS LLC Phone No. (214)368-4686
        Address    6688 N CENTRAL EXPRESSWAY STE 1000 DALLAS, TX 75206

FILED
TARRANT COUNTY
2/26/2018 9:56 AM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. _____ **141-298129-18**

| | | |
|---|---|---|
| REX PERFORMANCE PRODUCTS, LLC,<br>   *Plaintiff,* | §<br>§<br>§<br>§ | **IN THE DISTRICT COURT** |
| v. | §<br>§ | |
| JAMES DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS, LLC, and OLYMPUS PARTNERS, L.P.,<br>   *Defendants.* | §<br>§<br>§<br>§<br>§<br>§ | **141st JUDICIAL DISTRICT**<br><br>**TARRANT COUNTY, TEXAS** |

## ORDER FOR ISSUANCE OF TEMPORARY RESTRAINING ORDER AND ORDER SETTING HEARING DATE

REX PERFORMANCE PRODUCTS, LLC, Plaintiff in this cause has filed an Application for Temporary Restraining Order, for Temporary Injunctive Relief and for Permanent Injunctive Relief, supported by Affidavits/Declarations and evidence attached to the Application, in connection therewith, and has presented a request for Temporary Restraining Order as set forth in the Application. It clearly appears from the facts set forth in its Application and Exhibits that unless JAMES DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS, LLC and OLYMPUS PARTNERS, L.P., Defendants are immediately restrained from in the following ways:

    a. That Defendant JAMES DONALD TATE or any agent, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under his control or direction, be immediately restrained and enjoined from receiving, dispersing, transferring, depositing, cashing, or otherwise dissipating any "Super Bonus" or other compensation outside of Defendant's normal salary received from Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA, or any other agent, representative,

E-MAILED
2·27·18 *ajl*

*Registry Notified*

subsidiary, employee, servant, officer, relative, assignee or other person acting directly or indirectly under the control of said Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA;

b. That Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA or any agent, subsidiary, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under their control or direction, be immediately restrained and enjoined from paying, transferring, depositing, conveying, or otherwise delivering payment of any "Super Bonus" or other compensation outside of Defendant's normal salary received from Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA, or any other agent, representative, subsidiary, employee, servant, officer, relative, assignee or other person acting directly or indirectly under the control of said Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA so as to maintain the status quo;

c. That the Defendants JAMES DONALD TATE, PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA or any agent, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under their control or direction, be further immediately restrained and enjoined from disposing of any property in their possession that belongs to Plaintiff or which contains evidence of Defendants' bad acts, including, but not limited to, personal or work emails that are now or have ever been on their business premises or homes, files, electronic media, text messages between any of the

Defendants, computers, or voicemails from any Defendant or agent or representative of any Defendant;

Plaintiff will suffer irreparable injury because the actions of Defendants will cause immediate and irreparable harm to Plaintiffs right to recover relief in this cause. It is apparent that Defendants cannot respond in damages.

It is therefore, Ordered, that Defendants are immediately restrained in the following ways:

a. That Defendant JAMES DONALD TATE or any agent, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under his control or direction, be immediately restrained and enjoined from receiving, dispersing, transferring, depositing, cashing, or otherwise dissipating any "Super Bonus" or other compensation outside of Defendant's normal salary received from Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA, or any other agent, representative, subsidiary, employee, servant, officer, relative, assignee or other person acting directly or indirectly under the control of said Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA;

b. That Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P., MANU BETTEGOWDA or any agent, subsidiary, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under their control or direction, be immediately restrained and enjoined from paying, transferring, depositing, conveying, or otherwise delivering payment of any "Super Bonus" or other compensation outside of Defendant's normal salary

received from Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P.,  MANU BETTEGOWDA, or any other agent, representative, subsidiary, employee, servant, officer, relative, assignee or other person acting directly or indirectly under the control of said Defendants PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P.,  MANU BETTEGOWDA so as to maintain the status quo;

c. That the Defendants JAMES DONALD TATE, PREGIS PERFORMANCE PRODUCTS, LLC, OLYMPUS PARTNERS, L.P.,  MANU BETTEGOWDA or any agent, employee, servant, officer, representative, relative, assignee, or other person acting directly or indirectly under their control or direction, be further immediately restrained and enjoined from disposing of any property in their possession that belongs to Plaintiff or which contains evidence of Defendants' bad acts, including, but not limited to, personal or work emails that are now or have ever been on their business premises or homes, files, electronic media, text messages between any of the Defendants, computers, or voicemails from any Defendant or agent or representative of any Defendant;

by order of this Court.

Service of a copy of this Order on any other individual, whether or not named in this Order, but being acting directly or indirectly in concert with the above-named JAMES DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS, LLC and OLYMPUS PARTNERS, L.P., Defendants, shall be treated the same as if having received a notice and restraint from the Court and held subject to the jurisdiction of this Court by reason or violation of any provision herein. This notice may be served upon the party either by a copy of

this Order, but the party so affected by this restraint may be held responsible if it is determined that the respective party against whom liability is sought is determined to have had actual notice of the contents of this Order, whether or not actually served.

The Clerk of the above-numbered Court shall forthwith, on the filing by the Plaintiff REX PERFORMANCE PRODUCTS, LLC of the deposit in lieu of bond, if hereinafter required, and on approving the same according to the law, issue a temporary restraining order in conformity with the law and the terms of this Order.

This Order shall not be effective unless and until the Plaintiff REX PERFORMANCE PRODUCTS, LLC deposits into the registry of this Court and files with the Clerk the sum of 20,000⁰⁰ It is further ordered that this cash in deposit in lieu of bond may be made by Plaintiff REX PERFORMANCE PRODUCTS, LLC by check drawn upon the operating account of Darrell W. Cook & Associates, A Professional Corporation.

It is further ORDERED that Plaintiff's Application for Temporary Injunction, as contained in such pleading, be heard before this Court at 10:30 o'clock, A.m. on the 9th day of March, 2018, in the Courtroom of the 141st Judicial District Court, Tarrant County, Texas.

It is further ORDERED that the Clerk of this Court issue notice for service on JAMES

DONALD TATE, MANU BETTEGOWDA, PREGIS PERFORMANCE PRODUCTS, LLC and

OLYMPUS PARTNERS, L.P., Defendants, notifying them of the time and place of the hearing

above described, and commanding them to appear and show cause why the temporary injunction

prayed for in the Plaintiff's Application should not be granted.

Signed this _26th_ day of _February_ 2017 at _4:15_ o'clock, _P_.m.

_David H Evans_

JUDGE PRESIDING